Richardson, Ch. J.,
delivered tbe opinion of the court:
Two distinct claims are presented in this case upon different facts, though growing our of transactions alike in some particulars.
The facts upon which-the first claim is founded are set out in findings 1 and 2.
The claimants, in July, 1884, imported from Canada into the United States, at the port of Detroit, in Michigan, several lots of vegetable buttons, consigned to different parties. The customs officers at Detroit seized the goods, forfeited for the alleged reasons that in the invoices for entry they were fraudulently undervalued, in that the cost of the cartons and packing were not added to the value of the goods, as required, according to the interpretation of the law enforced by the customs officers under rulings of the Treasury Department. (Bev. Stat., 2839.)
The claimants made application for the release of the goods under the following provisions of the Bevised Statutes :
“ Sec. 3081. The collectors of the several districts of the United States, in all cases of seizure of any merchandise for violation of the revenue laws, the appraised value of which, in the district wherein such seizure shall be made, does not exceed. $1,000, are hereby authorized, subject to the approval of the ‘Secretary of the Treasury, to release such merchandise on payment of the appraised value thereof.”
The Secretary of the Treasury approved the application and authorized the release on payment of the appraised value.
The goods were thereupon appraised, the claimants paid $657, and the goods were released to them.
They now seek to recover back the money so paid on the ground that the law did not require the cost of cartons and packing tó be included in the valuation, and so the seizure was illegal, and they paid the money in duress of their goods and for the purpose of releasing them from illegal detention.
In support of the allegation of illegality of seizure upon the grounds stated, they rely wholly upon the decision of the Supreme Court in Oberteuffer v. Robertson (116 U. S. R., 499). *398 A careful examination of that case shows that what the court decided was this, that the cost or value of cartons and packing are not dutiable items, either by themselves or as part of the market value of the goods, unless they be of a material or form designed to evade duties, or are designed for use otherwise than in a bona-fide transportation of the goods to the United States, in which latter cases they are dutiable.
All the circumstances under which the goods involved in the present claim were seized are not before us. They might have been seized in mistake of law as to whether any cartons and packing were to be included in the cost, or in mistake of fact as to whether these particular cartons and packing were of the kind and description required to be so included, or were exempt under the statutes, or there may have been no mistake of either law or fact.
What appears is that when their goods were seized the claimants applied for a release upon the terms prescribed by statute; that the Secretary of the Treasury approved the application; and that the goods were surrendered to them upon payment of the sum determined as provided by law.
This was clearly a voluntary settlement and compromise, with full knowledge of all the facts of the matters at issue between the parties, whatever they were, in accordance with statute provisions on the subject, and is binding alike on the claimants and the defendants. Money so paid can not be recovered back. '
The claimants further urge that they are entitled to refund of the money thus paid, on the ground that the Secretary of the Treasury has authorized its repayment in his circular of February 2, 1886, set out in finding 2. After the decision of the Supreme Court in the Oberteuffer Case, the Secretary, by that circular, instructed collectors of customs that “the rule thus laid down in this decision will be applied to all future importations and liquidated entries, and also to all entries where the requirements of law as to protest, appeal, institution of suits, etc., have been fully complied with.”
The difficulties of the claimants’ case, as founded on this circular, are twofold: First, the exact description of .the claimants? goods do not so appear that we can determine whether or not they come within the rule of exemption laid down in that case. Second, it does not appear that “the requirements *399 of law as to protest, appeal, institution of suit, etc., bavebeen complied with,” and the contrary seems to be apparent from the findings. Nothing is due the claimant by reason of that circular.
As to the second claim, the facts are found in the numerous documents set out in findings 3 and 4. Concisely stated, 'they are these: Previously to the importation of the goods seized in 1884, as before stated, the claimants had imported several invoices of libe goods valued by them in their invoices in the same manner.
Fearing that they might, have more trouble and be subjected to fines and penalties on account of the former importations, they voluntarily proposed to the Secretary of the Treasury, on the 29th of July, 1884, to pay the additional duty which would accrue from the cartons and packings if added to the valuation, stating such additional dutyjit $373.80. (Finding 3, letter No. 1.) -
The Secretary directed that the claimants be informed that before considering this offer it would' be necessary for them to. deposit the sum offered. The money was thereupon deposited with the collector and turned over to the assistant treasurer, and an investigation was made about July 31, 1884. (Finding 3, letters Nos. 3, 4, 5.)
July 5, 1884, before any further action had been taken on that offer, the claimants wrote a letter to the Secretary, adding $1,695.61 to their former Offer. At the same time they deposited that additional sum with the collector and it was turned over to the assistant treasurer. (Finding 3, letters 6, 7, 8.)
October 3, 1874, before the acceptance of these offers, they again wrote to the Secretary, withdrawing the propositions-previously made, and offering the sum of $1,031.75 in lieu thereof. (Finding 3, letter No. 9.)
December 29, 18.84, the Secretary of the Treasury declined this offer, and ordered the money deposited to be returned to the claimants. (Finding 3, letters 10, 11.)
January 19, 1885, a draft for the amount of both deposits, $2,069.71, upon the assistant treasurer at Chicago, payable to the order of the claimants, was made, duly signed by the Secretary of the Treasury, and transmitted to the district attorney to be delivered to them. (Finding 4, No. 12.) It was never so delivered, and it does not appear that they were notified as to what had been done.
*400 Subsequently, in May, 1885, the Secretary of the Treasury, who was the successor of the Secretary by whom the offers had been rejected, considered the matter anew.
May 14, 1885, after receiving a report of the facts from the Solicitor of the Treasury, and after the district attorney had returned the draft, the Secretary addressed a letter to the Solicitor, compromising the claim “ by accepting the said sum of $2,009.71,” and about the same time caused the money to be drawn from the assistant treasurer and covered into the United States Treasury. (Finding 4, Nos. 13, 14,15.) The original draft was thereupon canceled. (Finding 3, No. 12.)
The claimants, upon these facts, sue for the money deposited by them upon the ground that the offer accepted had been withdrawn before acceptance, and that a different offer had been made, which had never been accepted.
It is familiar law, so well settled that it is hardly necessary to cite any of the numerous authorities, that to make a valid - contract the minds of both parties must meet on the same points, and that in any negotiation an offer on the one side must be accepted on the other, if at all, upon the very terms proposed, and that any departure therefrom is no acceptance. (Tilley v. County of Cook, 103 U. S. R., 161.) Furthermore, the offer may be withdrawn at any time- before acceptance, and when withdrawn the negotiation is at an end.
In the case of Minneapolis and Saint Louis Railway v. Columbus Rolling Mill (119 U. S. R., 149) the defendant offered to sell the plaintiff 2,000 to 5,000 tons of iron rails, at $54 a ton, the offer to be accepted prior to December 20. On December 16 the plaintiff accepted for 1,200 tons only. December 16 defendant declined this acceptance. December 19 plaintiff telegraphed acceptance of 2,000 tons, and asked for a reply. No reply was .made to that telegram nor to several others of a subsequent date making inquiries about it.
The court held that the offer to sell was rejected by plaintiff’s offer, in reply, to purchase a different quantity, and that upon the defendant’s declining that offer the negotiation was closed, and the plaintiff could not afterwards fall back on the defendant’s original offer and make a valid acceptance even before the time therein specified had expired.
In the present case, as in that, the minds of the parties never met.
*401 July 29,1884, the claimants oflered, as a compromise, $373.80. .July 5 they offered $1,695.61 additional. October 3,1884, they withdrew their former proposals, an<^ offered $1,031.75. May 14,1885, the Secretary undertook to accept $2,065.71. So the. parties never agreed, and the negotiation at an end.
The claimant is entitled to recover the sum of $2,065.71, and judgment will be so entered.