Green, Judge,
delivered the opinion of the court:
This action is a suit to recover income taxes alleged to have been wrongfully assessed against the plaintiff for the years 1916, 1917, 1918, and 1919, as a deficiency. The plaintiff paid the amount of the deficiency assessment, filed a claim for refund, and asks judgment for the amount paid. The defendant pleads full settlement and compromise of the taxes involved, and also that the taxes wbre due and rightfully collected from the plaintiff.
The assessments involved grew out of transactions which the plaintiff had with certain corporations and for the most part pertained to income from property which the plaintiff had transferred to them without consideration. As far back as 1908, plaintiff and his wife, both of whom possessed great-wealth, contemplated providing their four children with independent means and incomes by means of transfers of property to them directly, or to corporations for their use and benefit. In pursuance of this purpose, large amounts of property were transferred without consideration directly to their children, or to corporations created or controlled by the plaintiff. In the years 1917, 1918, and 1919 projoerty which had a market value of nearly $12,000,000 was transferred to three corporations controlled by the plaintiff, the stock of which, however, eventually was held by the children. The total amount transferred to these corporations from 1908 to 1920 approximated $25,000,000 in value.
The particular assessments that are in controversy are set out in Finding XIX, and they apply to the taxes of 1916, 1917, 1918, and 1919. An examination of the statements with reference to the taxes in controversy contained in this finding will show that they were made chiefly upon income derived from property which the plaintiff had transferred to these corporations, consisting of dividends, interest, and rentals; also profits on the sale of stocks and securities held by these corporations and obtained from the plaintiff or *373 claimed to be his property, the theory of the Government officials being that the transfers made by plaintiff were not in good faith and were invalid for that reason, or, at least, that the property had been transferred to corporations which were controlled by him and used after the enactment of the Federal income tax for the purpose of evading its provisions. There was also a claim on behalf of the Government that interest which was paid to these corporations by the plaintiff on money alleged to have been borrowed from them was not in fact paid, and therefore the deduction which plaintiff had taken in his income tax by reason thereof was disallowed; and the commissioner also disallowed a deduction made by plaintiff in his return for 1919 on account of a loss alleged to have been sustained on a sale by him of bonds for a small sum at public auction to one of these corporations . controlled, as before stated, by himself. In short, the Government contended that all of these transactions set out in Finding XIX as being in dispute were part of a fraudulent scheme of the plaintiff to defeat the Government in the collection of income taxes justly due from him for the years named. In support of their respective contentions as to the facts, the plaintiff and defendant introduced at great length both oral and documentary evidence, the latter largely in the form of account-book entries. It would require too much sjrnce to even summarize this evidence. The plaintiff paid all of the taxes, specified in Finding XIX as being in dispute, together with a penalty thereon at the time of entering into a- contract with the defendant, which the defendant alleges was in full settlement of all of the additional taxes and penalties assessed against plaintiff and his wife. Subsequently, and within the time prescribed by the statute of limitations, he filed a claim for refund of the whole amount of additional taxes and penalty paid for his own account. He now vigorously insists that he acted in good faith in all of the transactions involved, and that none of these additional taxes or penalties were due and owing from him at the time they were paid. Having within the period of limitations filed a claim for refund, he now asks judgment for the whole amount paid for taxes and penalties assessed *374 against him at the time of the alleged settlement, which he insists is not binding upon him. The respective contentions of the plaintiff and the defendant with respect to the separate items of assessments present numerous questions of law and fact which in many instances are inextricably mingled-
The plaintiff had a right to give his property to his children or to' a corporation for their benefit, either as stockholders or otherwise, and thereafter the income from the' property transferred could not be rightfully assessed against, him. It was only necessary that the transfers should be in good faith and that the corporations should not be used as a. device for enabling the plaintiff to escape income taxes, while he in fact kept control and had the use of the property. It would have been perfectly easy for the plaintiff to have so-conducted these transactions and to have had the accounts so kept on his own books and the books of the corporations, as to demonstrate that the transfers were made in good faith and without any purpose to play fast and loose with the' Government if such was the fact. Either through misfortune or design in many instances this was not done, and his; oral testimony is so general in its nature that it affords little-assistance in explanation of the transactions which are attacked by the Government. On the other hand, it must be said that there are some of them which need no explanation tas they afford no basis for any claim of fraud or illegality.
We do not, however, find it necessary to review the voluminous testimony offered and analyze the indefinite and involved entries that appear on the account books with reference to these transactions in order to determine whether, as counsel for defendant contend, the plaintiff was not acting in good faith with reference to certain of these transfers and other transactions in connection with the corporations, and whether they, or some of them, were in fact made or entered into for the purpose of defrauding the Government, and had in law that effect. In any event, as stated in the letters hereinafter mentioned, a controversy arose between plaintiff and the defendant as to the validity of the assessments and taxes involved herein and a contract was entered into between the parties, the terms of which control the decision in the case, as will be shown hereinafter.
*375 The plaintiff and defendant entered into an agreement for full settlement and compromise of the taxes involved in the case by and through an offer contained in a letter dated November 9, 1920, addressed to the collector of internal revenue at Pittsburgh, Pennsylvania, by the plaintiff, a copy of which is set out in Finding XY, and. an acceptance thereof contained in a reply to this letter dated November 12, 1920, signed by the Commissioner ’ of Internal Revenue. The plaintiff, however, contends that by reason of a provision included in his letter and offer, no evidence thereof can be received or considered by the court. It must be conceded that if the next to the last paragraph of the letter of plaintiff is applied literally the plaintiff’s objection to any evidence of a settlement or a payment thereunder, or anything done in relation thereto, must be sustained, and the situation is as if the contract and agreement had never been executed. The terms of this paragraph are broad and sweeping, and are as follows:
“ Neither this offer of compromise, nor any payment made or action taken thereunder, shall be used as an admission by, or offered in evidence against, Herbert Du Puy, Amy PI. Du Puy, Morewood Realty Holding Company, Lansing Realty Holding Company, or Goodwin Sand & Gravel Company, or their successor or successors, or representatives, or any of them, in any future action or proceeding of any nature whatsoever.”
’ We think it needs no argument to prove that a so-called settlement of which no evidence can be given, either in writing or orally on behalf of one of the parties thereto, is in fact no settlement at all, and if this paragraph must control the decision of the court? defendant’s plea of settlement at once comes to an end. But as this provision completely nullifies the former provisions in plaintiff’s letter containing the offer to pay $1,972,016.81, which was made “ in order to compromise and settle all controversies, claims, and liabilities,” and “ in full settlement and compromise ” of all civil and criminal' liability in connection with taxes for the years 1916, 1917, 1918, and 1919, it becomes necessary to consider whether such a provision in a contract of settlement is enforceable.
*376 In this connection it should be kept in mind that the parties had been for some months endeavoring to effect a settlement of the taxes in question, and frequent conferences between them had been held; and that finally a basis of agreement had been found and the parties came to á mutual understanding that the taxes and penalties assessed against plaintiff and his wife, Amy H. Du Puy, could be settled for the amount stated above. In fact, if oral evidence is admissible with relation to the payment and the terms thereof, the oral evidence of the settlement is abundant; but as the provision under consideration excludes any evidence of payment, the oral evidence, if this provision be followed, is incompetent, and on account of the requirements of the statute with reference to settlements it may be that it could not be used in any event.
The question involved has often been considered by the courts with, so far as we have been able to ascertain, perfect unanimity of opinion with reference to the construction of contracts in which a clause or proviso is found wholly nullifying the main provisions thereof and rendering them of no force and effect.
“After interpretation has exhausted itself in harmonizing the several clauses and words, if there is a residue which can not be reconciled, the repugnancy must be got rid of by rejecting what will free the contract from it.”
Davis v. Frazier, 150 N. C. 447, is a leading case. The opinion therein quotes with approval from Bishop on Contracts, section 386, as follows:
Also from the same author, section 387:
“ If the main body of the writing is followed by a proviso wholly repugnant thereto, it must necessarily be rejected, because otherwise the entire contract will be rendered null; but where it can be construed to qualify the main provisions so that all may stand together, it will be permitted to be retained.”
Also quoting from Jones v. Casualty Co., 140 N. C. 262:
“It is an undoubted principle that a subsequent clause irreconcilable with a former clause and repugnant to the general purpose and intent of the contract will be set aside.”
*377 The oral evidence leaves no doubt that the general purpose and intent of the contract was to make a settlement. On two different occasions, once by Mr. Whitaker, special counsel for the Government, and at another* time by the commissioner, the representatives of the plaintiff were informed that only a final settlement would be agreed to on behalf of the Government. It may be claimed that the oral evidence is incompetent. If so, we need only consider the contract itself, which provides for “ full settlement and compromise,” using the strongest and most explicit terms. If the contention of the plaintiff is to be sustained, nothing was settled. The two provisions of the contract are so utterly repugnant that both can not stand. The first expresses the general purpose of the contract, as is shown by both the oral evidence and the contract itself.
Moreover, if there was not to be a settlement there was no possible object in the contract. It accomplished nothing, was unenforceable, and without consideration. It bound neither plaintiff nor defendant, and became merely a scrap of paper.
Bean v. Aetna Life Insurance Co., 111 Tenn. 186, is another' leading case on the construction of conflicting clauses in a contract. In the decision in this case it is said:
“When two clauses of a contract are in conflict, the first governs rather than the last.”
And quoting from Blackstone:
“If there be two clauses so totally repugnant that they can not stand together, the first will be received and the last rejected.”
Also from Wisconsin Marine, etc., Bank v. Wilkin, 95 Wis. 111:
“The law is so settled on the subject that it can not be contended but that if the last clause of the contract is so repugnant to the first that both can not stand, the first must be taken as expressing the contract between the parties.”
To the same effect is 2 Parsons on Contracts, 513, and Straus v. Wanamaker, 175 Pa. 213.
Where a construction can be given the latter clause which will be consistent with the other terms of the contract and its *378 main purposes, the courts hold that such a construction should be given it, but this rule does not apply where the latter clause is utterly repugnant to the main purposes of the contract and would nullify it. The rule as above stated in such cases is simply that the latter clause will be rejected and the contract will stand.
It is suggested that a construction might be given the paragraph under consideration which would not be in conflict with the agreement for a settlement and compromise. This suggestion is made on the ground that such was the intention of the parties. On this point it is sufficient to say that if such a construction could properly be given this paragraph of the agreement, it would be as fatal to the plaintiff’s cause of action herein as if this paragraph of plaintiff’s letter were disregarded entirely.
The plaintiff also contends that the agreement for a compromise and settlement is void, for the reason that no consideration was received for it. We do not think this contention merits extended discussion. Plaintiff is correct in saying that the evidence shows that when the final figure for compromise and settlement was reached, the representatives -of the Government had come to the conclusion that no larger amount of taxes than the amount fixed for this item and included in the total to be paid could be legally collected, and it is therefore said that the Government yielded or' gave up nothing as a consideration for the agreement. It is not necessary for us to decide whether a consideration would be .found in the fact that the Government officials, as the conferences progressed, had been yielding one point after another'. Any consideration, however small, will support a contract for compromise and settlement. Plaintiff’s agreement to compromise and settle was not simply based on the amount of taxes which the Government officials agreed to accept. There were two other very important and moving considerations. The Government agreed to accept in compromise of the penalties a sum which not only was more than a million dollars less -than the amount of penalties originally assessed, but was many thousands less than the statutory amount of penalties on the taxes as finally computed. Besides this it was agreed, on behalf of the Govern *379 .ment, that all right to institute any criminal proceedings or •charges would be relinquished, and that all liabilities of any nature whatever in connection with the taxes or penalties .due or claimed to be due, either' from the plaintiff or his wife, were to be extinguished. It is immaterial whether the plaintiff could in fact be legally subjected to these penalties, <or whether he was subject to crinfinal prosecution. It is sufficient if the representatives for the Government believed ■that such was the case, as they Undoubtedly did, and we .hold that there was not only sufficient but ample consideration for the agreement.
There was also a still further ponsideration for the settlement. Part at least of the income which was in controversy .upon which, under the settlement, the plaintiff was to pay taxes had theretofore been assessed against corporations to -which the property had been transferred and taxes paid thereon by them. The contract of settlement provided that these taxes should be refunded to the corporations. (See last paragraph of plaintiff’s letter of November 9, 1920.) 'This, of course, was proper to prevent the income being taxed both against the corporations and the plaintiff, but the Government had the money and it was nevertheless a -consideration. The fact that there was some delay about this payment is immaterial. The corporations had some time before filed a claim for refund, and by the settlement the Government contracted to pay them the refund.
It is also urged on behalf of the plaintiff that in executing the contract of settlement he acted under duress. It is true that the Government officials refused to accept the sum finally agreed upon unless it was paid without protest and in compromise and full settlement of the amount claimed. But we ■can not believe that the attorneys on either side were so ignorant as not to know that the plaintiff, had he so desired, •■coujd have paid or at least tendered this sum without making .any agreement of settlement; and that whether this amount was received by the Government or not, the result would be the same. With the exception of the criminal proceedings mentioned in the agreement and the balance of the penalty, the Government could have proceeded no further and the *380 plaintiff could have sued for a refund if the jDayment was accepted on behalf of the Government. We repeat that there could have been no object in making the contract unless it was for the purpose of a final settlement of both civil and criminal liability, and the assurance that the Government would not attempt to exact more in either case.
It seems to be contended also that the proceedings of the Government with reference to collecting the tax and in the negotiations show duress. We need not determine whether any courtesies were required in making an examination of plaintiff’s books or whether at the time this was done the plaintiff was given a full opportunity to investigate the case on behalf of the Government. Certain it is that as the subsequent conferences between the two parties progressed the additional assessments against the plaintiff were discussed item by item and were fully understood by him. At these conferences what was said with reference to criminal prosecution appears to have been brought in by the plaintiff, who wanted to have the settlement cover this matter. It is well settled that the fact that one party to a settlement entered into it reluctantly will not void it, and it has even been held that the fact that plaintiff is under arrest at the time the compromise is entered into will not be sufficient to defeat it; and, as a matter of course, the fact that one of the parties signed the settlement to avoid the trouble and expense of a law suit does not amount to intimidation or duress, for that is ordinarily the purpose of a settlement. The seizure of property by legal process on a claim made in good faith will not invalidate a compromise settlement. In United States v. Child & Co., 12 Wall. 232, 244, it is said:
“ But no case can be found, we apprehend, where a party who, without force or intimidation and with a full knowledge of all the facts of the case, accepts on account of an un-liquidated and controverted demand a sum less than what he claims and believes to be due him, and agrees to accept that sum in full satisfaction, has been permitted to avoid his act on the ground that this is duress.”
The principle upon which this statement in based applies equally to the converse of the case where a party, with full knowledge, pays a sum greater than what he claims he should *381 and believes tbat he ought to pay, and pays it in full settlement. The facts in the Child's case much nearer approach duress than in the case at bar. Like the instant case, a very large sum was involved, but unlike the instant case, it was stated in the opinion of the Court of Claims, from which an appeal had been taken, that the action of the Government had “ reduced them (Child & Company) to the verge of bankruptcy,” and it appeared that the plaintiff did not sign the receipt voluntarily, but under protest. In the case at bar the plaintiff, during the negotiations for settlement, was represented by able attorneys, and both they and the plaintiff knew before the settlement was signed everything that they know now. In order to successfully defend,on the ground of force or duress, it must be shown that the party benefited thereby constrained or forced the action of the injured party, and even threatened financial disaster is not sufficient. McCormick v. St. Louis, 166 Mo. 315, 334. That plaintiff, who was at the time under indictment in connection with the tax return of the Crucible Steel Co., made the settlement to avoid some threatened or possible embarrassment or inconvenience is quite plain, but in the case last cited this is said to be usually the moving influence in bringing about a settlement. There is nothing in the evidence to show any threats or intimidation on the part of the Government officials.
If the counsel for the Government had acted in bad faith, the conclusion would be different, but there is nothing in the evidence to show bad faith on their part.
The defendant also urges that the payment of $1,912,016.81 accompanying the letter of offer was made without protest, and at the time when it was paid a protest was necessary to recover any of it back. It is true that Du Puy stated to the collector in substance that he proposed to “ push the matter to the end,” but this statement was not contained in his letter which went on to Washington for determination of whether his offer should be accepted. Moreover, it was expressly stated at the conferences at which the settlement was made that this amount would not be received as paid under protest. In fact, that was one of the conditions which the Government officials insisted upon if a settlement was to be made. The plaintiff could have simply paid what the Government offi *382 cials demanded and made a protest if he had desired, without the settlement. He did not see fit to do this, and, consequently, must be held to have paid without protest. It was not until about three years after the payment that a suit could be maintained to recover a tax without protest. This was provided by the revenue act of 1924, section 1014, 43 Stat. 343. The payment was a voluntary one, as we have before found, and we think that plaintiff’s suit is also precluded by reason of a lack of protest. United States v. N. Y. & Cuba Mail S. S. Co., 200 U. S. 488; Fox v. Edwards, 280 Fed. 413.
The conclusions which we have reached with reference to the contract for settlement and the lack of protest make it unnecessary to determine whether the taxes paid by the plaintiff were legally due and owing to the Government. It follows that his petition must be dismissed, and it is so ordered.
SiNNOtt, Judge; Moss, Judge; Graham, Judge; and Booth, Chief Justice, concur.