**AVIATION CORPORATION v. UNITED STATES.**

No. 45186.

Court of Claims.

June 1, 1942.

John E. Hughes, of Chicago, Ill. (John F. O'Ryan and Basil O'Connor, both of New York City, on the brief), for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

This is a suit to recover income tax, penalty and interest levied against the plaintiff, the Aviation Corporation, as transferee of the assets of the Universal Aviation Corporation. The levy was based upon the profits arising from an alleged sale to plaintiff by the Universal Aviation Corporation of stock which it held in the Fokker Aircraft Corporation of America.

Briefly the general facts are as follows:

The Universal Aviation Corporation was organized in 1928. On May 16, 1929, it sold 50,000 shares of the capital stock of the Fokker Company to the plaintiff for a profit of $2,248,000. The plaintiff company was organized March 1, 1929. During the month of August 1929 it completed the acquisition of more than 95% of the stock of the Universal Aviation Corporation. On March 15, 1930, the Universal Aviation Corporation and subsidiaries filed a tentative income tax return for the period January 1 to August 1, 1929, and on May 15, 1930, a final return, showing a net loss for that period. In making its return it failed to report the sale of the stock of the Fokker Company. On June 1, 1934, the Commissioner of Internal Revenue recommended to the Department of Justice the institution of criminal proceedings against 8 men who at the time of the transaction were officials of either the plaintiff company or the Universal Aviation Corporation.

On June 20, 1934, two indictments were returned, one against Halsey Dunwoody and George B. Schierberg, charging them with attempting to defeat and evade income taxes of the Universal Aviation Corporation for the period January 1 to August 1, 1929, and a second indictment against 6 other men named, charging them with conspiracy to evade and defeat the income taxes of the Universal Aviation Corporation for the same period.

A short time later a compromise settlement was suggested to the Bureau of Internal Revenue. Then followed correspondence and conferences between various attorneys of the parties at interest, including plaintiff, and officials of the Department of Justice and the Bureau of Internal Revenue in reference to the settlement of the civil as well as any criminal liability. Apparently the first offer, in the amount of $75,000 in compromise of all civil and criminal liability, was made by the attorneys for defendant Loucks. The assistant general counsel for the Bureau of Internal Revenue declined to recommend this settlement to the Department of Justice.

On January 9, 1935, R. S. Pruitt, Vice President of the Aviation Corporation, addressed a letter to the Hon. Homer S. Cummings, Attorney General, to which he attached cashier's check in the sum of $349,532.34, which was tendered in full settlement of all civil and criminal liability arising from the income taxes of the Universal Aviation Corporation for the year 1929. It was stated that any error in computation in favor of either party would be adjusted.

After considerable further correspondence the offer was accepted, the check was endorsed to the Collector of Internal Revenue and the indictments were dismissed September 17, 1935. Later upon computation by the Bureau of Internal Revenue it was found that the amount of the tax, interest and penalty should be $760.95 additional, which on November 26, 1935, was sent to the Attorney General in the form of a check by the Aviation Corporation, payable to the order of the Collector of Internal Revenue. Receipt was acknowledged by the Attorney General on November 30, 1935, and on the same date the Attorney General addressed a letter to the Commissioner of Internal Revenue, en-

closing the check and stating "with the application of these amounts to the liability this Department considers the entire case closed."

On August 26, 1937, the plaintiff, the Aviation Corporation, filed a claim for refund in the amount of $350,293.29.

Various grounds are set out in the application and discussed in plaintiff's brief in behalf of the application for a refund.

The defendant contends that all the questions in the case are foreclosed and disposed of by the offer and acceptance of the payment specified in compromise of all civil and criminal liability, both pending and otherwise arising out of the facts of the case. It therefore enters a plea in bar.

To this plea of compromise settlement the plaintiff makes several defenses. It first asserts that the Attorney General had no authority under the law to make a compromise settlement, but that the Commissioner of Internal Revenue alone had such authority.

We disagree. The Act of June 30, 1932 (U.S.C.Title 5, Section 124, 5 U.S.C.A. §§ 124–132 note), authorizes the President to transfer the whole or any part of any executive agency or the functions thereof to the jurisdiction and control of any other executive agency, and to designate and fix the name and functions of any consolidated activity or executive agency and the title, powers and duties of any executive head.

By the terms of section 5 of Executive Order No. 6166[1] (U.S.C.Title 5, § 132, 5 U.S.C.A. §§ 124–132 note), the function of prosecuting in the courts of the United States claims and demands by and offenses against the Government of the United States and of defending claims and demands against the Government, then exercised by any agency or officer were transferred to the Department of Justice, together with the function of deciding whether and in what maner to prosecute, or to defend, or to compromise, or to abandon prosecution, theretofore exercised by any agency or officer.

■ We think that under this Order, if not under his general powers, the Attorney General had authority to settle both the civil and criminal liabilities arising out of the transaction in question,[2] especially since he collaborated with the officers of the Bureau of Internal Revenue, was acting on their request and conferring with them, and since that Bureau had had direct correspondence with officials of the plaintiff and had approved and ratified the compromise and accepted the check in settlement.

This conclusion is further strengthened by the recodification act which showed interpretation by the Congress of the existing law as conferring upon the Attorney General the authority to compromise any civil or criminal case arising under the internal revenue laws.[3]

■ The plaintiff next asserts that the deal was not in fact a sale but an intercompany transaction, upon which no income liability was incurred; that it later procured more than 95% of the stock of the Universal Aviation Corporation, changed the sale to a loan for the full amount of the purchase price with option to purchase, which option was later exercised, thus changing the entire transaction, and that there was therefore nothing to compromise.

This contention cannot be sustained. The sale was completed in May 1929. The agreed price was $53 per share. The original purchase price of the stock when acquired by the Universal company was $8 per share. Some time later the acquisition by plaintiff of the major portion of the stock of the Universal Aviation Corporation was completed, and the books· were changed to show, instead of a sale, a loan for the full amount of the purchase price with option to purchase, which option was exercised on September 4, 1929.

---

[1] The pertinent part of Section 5 of Executive Order No. 6166 is as follows: "The functions of prosecuting in the courts of the United States claims and demands by, and offenses against, the Government of the United States, and of defending claims and demands against the Government, and of supervising the work of United States attorneys, marshals, and clerks in connection therewith, now exercised by any agency or officer, are transferred to the Department of Justice.

"As to any case referred to the Department of Justice for prosecution or defense in the courts, the function of decision whether and in what manner to prosecute, or to defend, or to compromise, or to appeal, or to abandon prosecution or defense, now exercised by any agency or officer, is transferred to the Department of Justice."

[2] Duncan v. United States, D.C.W.D. Ky., 39 F.Supp. 962, 964.

[3] U.S.C.Title 26, Section 3761, 26 U.S. C.A. Int.Rev.Code, § 3761.

This same point was presented in the District Court of the United States for the Eastern District of Missouri on demurrer to the indictments. In overruling the demurrer, the court said:

" * * * But, I repeat, I am not able to see how a taxpayer may, after finally consummating a sale in which there is taxable profit, attempt to rescind such fully consummated sale and then 'doctor' his books and minutes and records, so as to show a wholly false situation.

"While the case is unique in legal annals, it is yet so shot through with immoral trickery, that if it is not a criminal offense, it ought to be, and I think it is."

The plaintiff also contends that since the full amount of the tax liability, including penalty and interest, was paid, there was no compromise, and that the payment of such liability in full negatived the possibility of the transaction being treated as a compromise. In making this point it overlooks the fact that the plaintiff's own proposal as outlined by its vice president covered not only any alleged tax liability, but also full settlement and dismissal of the indictments, and the further agreement that the defendant would take no further proceeding, criminal or civil, against any party at interest. The entire record bears out this understanding.

Plaintiff further contends that the use of the expression in the compromise offer to the effect that any error in computation in favor of either party would be adjusted evidenced an intention to leave the entire question open as to whether there was any tax liability. This, too, is negatived by the record. Plaintiff, being uncertain as to just how the amount should be calculated, submitted the results of two different methods of calculation, differing slightly in their totals. The defendant insisted that the calculation must be made by the Bureau of Internal Revenue. It is evident that the reference to adjustment was inserted not for the purpose of leaving open the question of tax liability but to provide for the correction of any errors in computation.

Plaintiff further contends that it had no interest in this transaction, that the indictments were against individuals who were no longer officials of plaintiff company and that the Universal Aviation Corporation had been dissolved in 1931, and the tax liability, if any, was that of the Universal Corporation and not that of the plaintiff.

Plaintiff was the transferee of the assets of the Universal company and took such assets subject to its legal obligations. Several of the indicted officials were officials of either the Universal Corporation or the plaintiff company at the time the transaction occurred. The record is silent as to whether they had disposed of their stock in the corporation. The officials of the plaintiff company participated in the negotiations for a settlement. The facts as a whole tie the parties in interest so closely that it is rather illogical to say that plaintiff had no interest in the compromise settlement. Besides, it would not be necessary for it to have a direct financial interest in order that there might be consideration for the compromise settlement. Consideration may mean an advantage flowing to one party or a loss that is occasioned to the other. If by the payment of a compromise settlement the plaintiff induced the defendant to waive rights or asserted rights, both criminal and civil, against other parties, it would be estopped from asserting failure of consideration and thus securing the return of moneys paid. Such act had induced the defendant to waive its claim until limitation had run in favor of all other parties and thus until its claim to any rights had been sacrificed.

Even if it were conceded that plaintiff company has no financial interest in the transaction, it would, there being no duress, then place itself in the position of a volunteer, which would prevent recovery.[4]

It is claimed that the payments were made under duress. This claim is rather incongruous with the claim that it had no interest whatever in the transaction. It is difficult to see how there could have been duress if there was no interest. While we do not approve of the practice of instituting criminal proceedings as a strong-arm method of collecting taxes, we think the facts in this case go much further than that. We find there was no duress. Not only was the initiative in the move to secure a settlement taken by the attorneys for the individuals who were indicted, but the negotiations were participated in by the officials of the

---

[4] Aaron v. Hopkins, Collector, 5 Cir., 63 F.2d 804; Clift & Goodrich v. United States, 2 Cir., 56 F.2d 751, 753.

plaintiff. The plaintiff quotes from defendant's motion to dismiss the indictments a sentence which when standing alone would indicate that the criminal cases were not compromised; however, when the paragraph is read as a whole, it is manifest that all phases of the case, both civil and criminal, were included in the compromise. This was also borne out by the testimony and documents filed as evidence.

Plaintiff's defenses are based upon a tier of technicalities which we are unable to surmount. Its position is fictionized upon a cushion of legality that will not bear analysis in the light of the facts of record.

Whatever may be the merit of any of these defenses, however, they are disposed of by the consummation of the compromise settlement.[5]

An outright sale of the Fokker stock was made in May 1929. Some three months later the plaintiff secured a large percentage of the stock of the Universal Corporation. It changed the books of that company to show a loan in the same amount as the purchase price, exercising the option to purchase in September 1929. Then it made an income tax return reporting the same as a non-taxable intercompany deal, the Universal company failing altogether to report the sale.

An audit by the Internal Revenue Bureau some time later disclosed the transaction and the failure of the Universal company to report the sale. The Internal Revenue Bureau referred the matter to the Department of Justice with a recommendation that the officials be indicted. This was done. Demurrers to the indictments were overruled and the attorneys for the indicted officials, as well as officials of the plaintiff company, began negotiations for a compromise settlement of both the civil and criminal liability. The first definite offer that is disclosed by the record is the suggestion that $75,000 be paid in settlement of both the civil and criminal liability. The Bureau of Internal Revenue was requested to check over this offer and see if it could not recommend such a compromise. It did so and rejected the offer. The Department of Justice at first insisted upon full payment of tax, penalty and interest, plus pleas of guilty on the part of the indicted officials. Later, after repeated conferences, a compromise was agreed upon which was much more than plaintiff's original offer, but which included less than was originally demanded by the Department of Justice. The tax, including penalty and interest, was paid in full and all the indictments were dismissed, and it was agreed that there would be no further proceedings civil or criminal. Clearly this was a compromise agreement, the negotiations for which had been participated in by attorneys for all parties, as well as by officials of the Bureau of Internal Revenue. It was accepted and ratified by all the parties, including the Bureau of Internal Revenue, which approved the settlement, made the necessary formal levies and cashed the check. The case was then reported closed.

We find that there was a fully authorized compromise settlement of the entire matter; that the defendant's plea in bar should be sustained, and the petition dismissed.

It is so ordered.

---

[5] Castle v. United States, 17 F.Supp. 515, 84 Ct.Cl. 300, 311; Shantz v. United States, 23 Ct.Cl. 384, 398; Du Puy v. United States, 67 Ct.Cl. 348, 378, 379; Walker v. Alamo Foods Co., 5 Cir., 16 F.2d 694.