**BACKUS et al. v. UNITED STATES.**
No. J–204.

Court of Claims.
May 31, 1932.

Plaintiff instituted this suit April 18, 1928, to recover income, war-profits, and excess-profits taxes and penalties for the calendar years 1917 to 1920, inclusive, aggregating $2,489,119.50, with interest thereon from the date of payment, March 22, 1926. It is alleged that the amount sued for was wrong-

fully and illegally collected and was paid involuntarily and under duress.

The aggregate amount of the tax and penalty claimed in this suit was paid voluntarily and without question pursuant to a consent decree for the amount entered by the United States Board of Tax Appeals of March 6, 1926, and pursuant to an agreement reached by the plaintiff, its representatives, and counsel, and the United States by its proper officers after negotiations and conferences extending over a period of two months.

The defendant by special answer and plea to jurisdiction contends that the plaintiff finally and conclusively settled and disposed of all questions affecting its tax liability and that of its affiliated corporations for the years 1917 to 1920, inclusive, by an executed settlement and compromise agreement which the Commissioner of Internal Revenue was authorized by section 3229 of the Revised Statutes (26 USCA § 158) to make, and that by reason of plaintiff's previous action in relation to the settlement, the compromise agreement, and the consent decree of the United States Board of Tax Appeals, the payment of the amount adjudicated by the Board of Tax Appeals and the prejudicial effect upon the defendant resulting therefrom, the plaintiff is estopped from maintaining this action to recover the full amount in question or any portion thereof.

### Special Findings of Fact.

1. The plaintiff in this proceeding is now and was at all times hereinafter mentioned a Maine corporation with principal office at Minneapolis, Minn. It was and is affiliated with the International Lumber Company, Rainy River Improvement Company, Minnesota, Dakota & Western Railroad Company, Falls Lumber & Coal Company, Watrous Island Boom Company, and International Insulation Company, all Maine corporations with principal offices at Minneapolis.

2. The Commissioner of Internal Revenue in February, 1921, pursuant to his determination made January 4, 1921, of which the plaintiff and its subsidiaries were advised, assessed additional income and profits taxes for the calendar year 1917 in the amount of $303,146.23 against the plaintiff and each of its subsidiary companies, as follows:

| | |
|---|---|
| Minnesota & Ontario Paper Company..... | $267,395.93 |
| International Lumber Company........... | 35,205.09 |
| International Insulation Company........ | 18.26 |
| Falls Lumber & Coal Company........... | 120.02 |
| Watrous Island Boom Company........... | 406.93 |
| **Total** ..................................... | 303,146.23 |

3. In March, 1924, the Commissioner of Internal Revenue, pursuant to a letter of February 16, 1924, to plaintiff and its affiliated corporations, assessed further additional taxes against certain members of the affiliated group for 1917, as follows:

| | |
|---|---|
| Minnesota & Ontario Paper Company..... | $229,715.28 |
| International Lumber Company........... | 220,705.58 |
| Falls Lumber & Coal Company........... | 4,675.12 |
| International Insulation Company........ | 2,003.63 |
| **Total** ...................................... | 457,099.61 |
| Less overassessment on Watrous Island Boom Company ........................... | 406.93 |
| Net additional assessment.............. | 456,692.68 |

These additional assessments for 1917 aggregated $759,838.91.

4. In March, 1924, the commissioner, pursuant to the aforesaid letter of February 16, 1924, also assessed additional taxes for the calendar year 1918 in the amount of $884,665.66 based on his determination of the consolidated net income and invested capital of the plaintiff and its affiliated corporations.

March 31, 1921, a claim in abatement was filed against the assessment of $267,395.93 for 1917, which claim was rejected by the commissioner February 4, 1925. April 2, 1924, an abatement claim was filed against the additional assessment of $229,715.28 for 1917, and on the same date, a claim in abatement was filed against the additional assessment of $884,665.66 for 1918. The last-mentioned claim in abatement for a portion of the 1917 additional assessment was rejected by the commissioner February 4, 1925. On January 23, 1925, the claim for abatement filed against the additional tax assessed for 1918 was allowed in part and rejected in part by the commissioner. The plaintiff and its affiliated corporations were duly notified by the commissioner of his action upon these claims.

5. January 23, 1925, the commissioner after an examination and audit of the returns of the affiliated group and of their books and records for the calendar year 1919 determined deficiencies against members of the consolidated group for that year aggregating $613,248.82 and duly notified the plaintiff and its affiliated corporations of the deficiencies and the details thereof pursuant to section 274 (a) of the Revenue Act of 1924 (26 USCA § 1048 note). On the same date, to wit, January 23, 1925, the commissioner after an investigation and audit of the returns of the plaintiff and its affiliated corporations, and of the books and records for the calendar year 1920, determined deficiencies aggregating $1,403,435.47 and on that date duly noti-

fied the plaintiff and its affiliated corporations of these deficiencies and the details thereof pursuant to section 274 (a) of the Revenue Act of 1924.

6. February 21, 1925, the plaintiff and its affiliated corporations instituted proceedings before the United States Board of Tax Appeals, Docket Nos. 2127 and 2128, by the filing of petitions setting forth numerous errors alleged to have. been committed by the Commissioner of Internal Revenue in his determinations and contesting the correctness of the deficiencies determined by the commissioner for the calendar years 1917 and 1918.

March 16, 1925, the Commissioner of Internal Revenue by his counsel, the Solicitor of Internal Revenue, filed motions to dismiss the petitions in proceedings, Docket Nos. 2127 and 2128, for 1917 and 1918 on the ground that he had not determined that additional assessments should be made for 1917 and 1918 within the meaning of section 274 (a) of the Revenue Act of 1924. After hearing upon these motions they were denied by the board June 4, 1925.

March 19, 1925, the plaintiff and its affiliated corporations instituted a proceeding, Docket No. 2699, before the United States Board of Tax Appeals by the filing therein of their joint petitions assigning various errors alleged to have been committed by the Commissioner of Internal Revenue in his determinations for the calendar years 1919 'and 1920 and contesting the correctness of the deficiencies determined for those years.

April 14, 1925, the commissioner by his counsel, the Solicitor of Internal Revenue, filed a motion to require the petitioners before the Board of Tax Appeals to make the petition, Docket No. 2699, for 1919 and 1920 more definite and certain. A hearing on said motion was had by the board April 20, 1925, and, on that date, an order was entered by the board requiring the petitioners to file an amended petition on or before June 15, 1925. On June 9, 1925, the board entered an order permitting the filing of the amended petitions setting forth the information called for. On September 25, 1925, the petitioners before the board filed amended petitions for the years 1917 to 1920, inclusive, in proceedings numbered 2127, 2128, and 2699. Thereafter, on October 16, 1925, the Solicitor of Internal Revenue, acting for the commissioner, filed answers to the petitions specifically admitting or denying all of the allegations thereof and praying that the Board of Tax Appeals enter judgments against the petitioners for defi-

ciencies for the years 1917 to 1920, inclusive, in excess of the amounts determined by the commissioner, and that the petitions be dismissed.

7. October 26, 1925, the plaintiff and the other petitioners before the board filed a motion to strike certain paragraphs numbered 24, 25, and 26 from the answers filed by the commissioner to the petitions in the three cases before the board in which paragraphs the commissioner asked for increased deficiencies. After hearings thereon the board on December 23, 1925, entered an order denying said motion, to which action the petitioners did not enter or take exception.

8. January 4 and January 6, 1926, stipulations of certain facts by the petitioners and the commissioner were filed with the board. The contents of the stipulations are not disclosed by the record in this case.

October 22, 1925, the Board of Tax Appeals having reached the three proceedings above mentioned on its docket placed them on its calendar for trial on January 14, 1926. Thereupon the commissioner made application to the board for the issuance of subpœnas for a number of witnesses, which subpœnas were duly issued by the board, whereupon the government proceeded with its preparations for hearing of the proceedings before the board on January 14, 1926. The record in this case does not disclose what preparations, if any, the petitioners before the board made for a hearing on that date.

January 4, 1926, Ralph M. Shaw, of the firm of Winston, Strawn & Shaw, counselor and attorney in fact for the petitioners before the Board of Tax Appeals, appeared at the Bureau of Internal Revenue, Washington, and requested that the commissioner consent to a continuance of the hearing of the proceedings before the board for a period of sixty days in order to give Mr. E. W. Decker, president of the Northwestern National Bank, of Minneapolis, Minn., a friend and business associate of E. W. Backus, president of the Backus-Brooks Company and the president of the Minnesota & Ontario Paper Company, who was representing the plaintiff in the matter of the taxes and penalties due by the plaintiff and the other petitioners before the Board of Tax Appeals for the years 1917 to 1920, inclusive, an opportunity to make all necessary preparations to assist in a discussion of the various issues with reference to the tax liability of the plaintiff and its affiliated corporations for those years, with a view to arriving at a settlement of the whole case. Mr. Shaw brought with him and pre-

sented to counsel for the commissioner a letter written to him by Mr. Decker, as follows:

"With reference to the tax controversies between the Government and the Minnesota & Ontario Paper Co., Backus-Brooks Co., and associate companies, with which you are familiar I beg to state that I have consented to accept the responsibility of settling these cases with the Government provided Secretary Mellon and those in his department who are handling these matters would welcome me into the case in such capacity. I have agreed to do this in response to the requests and resolutions of the boards of directors of these companies, believing it my duty to do so inasmuch as we have been their bankers for a great many years and I am generally familiar with their affairs.

"However, I am also obliged to state that I have been somewhat reluctant to assume this responsibility because of my recent severe illness. I was in the hospital all of the month of September with an ulcer of the stomach which had developed into a hemorrhage and I am now working forenoons only although I feel well enough when I do not get too tired. Also, as soon as we have had our annual meetings on the 11th and 12th of this month, I am expecting to leave for the South for a brief rest and outing.

"You realize that my knowledge of the issues at this time is most general but in event my proposed intercession is welcomed, I desire to go into the matter sufficiently to be in position to pass upon the claims with fairness to the Government as well as the taxpayers. I am not interested in saving these companies from paying their legitimate taxes, and my effort will be, if I serve at all, to do justice both to the Government and the companies.

"In view of the foregoing and particularly my present condition of health, should my offices be acceptable to the Government, I would appreciate your obtaining a postponement of say sixty days, within which time I could become sufficiently familiar with the controversies and before the expiration of which I would be prepared to sit down and work things out with the Government representatives. I expect to be away less than a month but I feel that I will need a large part of the rest of the time to get ready for a conference.

"Enclosed herewith are certified copies of the resolutions passed by the directors of the Minnesota & Ontario Paper Co. and the Backus-Brooks Co., giving me full authority in the capacity mentioned. I naturally would like word from you as soon as you have had opportunity to take this matter up with the proper officials in Washington, which I understand you plan to do on Monday."

Accompanying this letter was a certified copy of a resolution passed by the board of directors of the plaintiff company on December 24, 1925, as follows: "Be it resolved, That E. W. Decker (president of the Northwestern National Bank, Minneapolis) be, and he hereby is, authorized and empowered to agree and stipulate on behalf of this company and its affiliated or subsidiary companies with the Commissioner of Internal Revenue or any other representative of the United States Government, in the controversies now pending before the Board of Tax Appeals with respect to any facts therein or to compromise and settle such controversies or any part thereof, any agreement as to facts or compromise of such controversies being hereby ratified and confirmed."

Mr. Lake, an attorney in the office of the Solicitor of Internal Revenue, and the attorney representing the government in the cases involving the tax liability of the plaintiff and its affiliated corporations, objected to the continuance of the hearing and insisted that the trial proceeded on January 14, 1926.

One of the issues in the cases then pending before the board was the amount of loss sustained by the taxpayers upon timber resulting from depredations by fire, wind, and insects. Mr. Lake, the attorney for the commissioner, stated to Mr. Shaw that if the taxpayers would agree to accept the commissioner's determination as to the quantity and species of timber that was affected by this claim for loss by fire, wind, and insects, and eliminate that part of the issue from the case, the government would not object to a postponement of the hearing for thirty days. Mr. Shaw thereupon communicated with Mr. Decker with reference to the matter and was authorized by Mr. Decker to accept the government allowances on the losses by fire, wind, and insects, with the understanding that the taxpayers, petitioners before the Board of Tax Appeals, could submit evidence on such claims to the Commissioner of Internal Revenue and his representatives. A stipulation was prepared giving effect to that understanding which was filed with the board together with a formal motion to continue the case by consent from January 14, to February 25, 1926. The board on January 6, 1926, granted the continuances and reset the case for February 25, 1926. The attorneys for the commissioner, acting upon the assumption

that the trial of the cases would proceed on that date, applied to the board and obtained subpœnas for witnesses requiring their appearance on that date, and made other preparations for the year. The record in this case does not disclose what preparations, if any, were made by the plaintiff for a hearing on February 25, 1926.

9. Between January 6 and February 26, 1926, many conferences were held between the officers of the Bureau of Internal Revenue and the Treasury Department, and their counsel, and representatives of the plaintiff and its affiliated corporations, petitioners before the Board of Tax Appeals for the purpose of arriving at an agreement and settlement of all matters concerning the tax liability of the plaintiff and its affiliated corporations for the years 1917 to 1920, inclusive, and for the purpose of arriving at a stipulation of all matters involved in the proceedings before the Board of Tax Appeals. E. W. Decker, Ralph M. Shaw, David R. West, John Junell, and Ralph D. Main represented the plaintiff and its affiliated corporations, petitioners before the board, and Clarence M. Charest, assistant solicitor of the Bureau of Internal Revenue, E. C. Lake, and L. C. Mitchell, special attorneys, Bureau of Internal Revenue, represented the commissioner and the government at these conferences. Alexander W. Gregg, Solicitor of the Bureau of Internal Revenue, was frequently called in to the conferences and on one or two occasions the Commissioner of Internal Revenue, David H. Blair, participated in the conferences.

More than three hundred separate items were involved in the proceedings before the board and at the very outset of negotiations the government's representatives informed counsel and representatives of the plaintiff and the other petitioners before the board, that unless an agreement could be reached upon all of the items with reference to the tax liability for the years involved and all of the issues involved, it would be necessary to proceed with the trial before the board because it would be useless to agree on part of them and submit evidence to the board on the other items. This was made clear to the representatives of the plaintiff and its affiliated corporations and it was with the understanding that the agreement they were attempting to enter into must embrace all of the issues involved in the proceedings then pending before the board that the parties entered into the negotiations.

There was much discussion at the first conference, but no agreement was reached on any of the items. Subsequent conferences were held and each item about which the taxpayers, petitioners before the board, raised any question was taken up and considered separately, and finally agreed upon. In some instances the amounts suggested by the officers and attorneys of the Treasury Department were accepted by the taxpayer and in some instances the amounts contended for by the taxpayers were accepted by the Commissioner of Internal Revenue and his attorneys. In some instances agreements were reached on a give-and-take basis, both sides making concessions.

10. The question of the penalty that the taxpayers should pay, if any, was discussed at length and finally on February 25, 1926, an agreement was reached with reference thereto; on that date Alexander W. Gregg, Solicitor of Internal Revenue and counsel for the Commissioner of Internal Revenue, prepared and handed E. W. Decker, representing the taxpayer, the following letter: "Confirming the agreement made with the Commissioner of Internal Revenue on February 24, 1926, you are advised that the amount of the penalty to be assessed against you as the result of the negligent understatement of your tax liability for the taxable years 1917, 1918, 1919, and 1920 will be compromised by accepting a sum equal to 6 per cent per annum on the amount of the deficiencies determined and assessed in accordance with the stipulation this date entered into between the taxpayer and the representative of this office, from the date the deficiencies became due and payable to the date of payment."

On the same day, February 25, 1926, all items in dispute with reference to the tax liability of plaintiff and its affiliated corporations and all items in dispute under the issues involved in the proceedings before the Board of Tax Appeals were agreed upon by the Commissioner of Internal Revenue and his representatives, and the representatives of the plaintiff and its affiliated corporations, and the entire agreement between the parties on all matters in dispute was reduced to writing, as follows:

"United States Board of Tax Appeals

"Appeals of Minnesota & Ontario Paper Co. and its affiliated corporations, to wit: International Lumber Co., Falls Lumber & Coal Co., International Insulation Co., Minnesota, Dakota & Western R. R. Co., Rainy River Improvement Co., and Watrous Island Boom Co., Docket Nos. 2128, 2127, 2699

"Stipulation

"It is hereby stipulated and agreed by and between the Commissioner of Internal Reve-

nue, by his attorney, A. W. Gregg, Solicitor of Internal Revenue, and by the Minnesota & Ontario Paper Co. and its said affiliated corporations, hereinafter referred to as the "taxpayer,' by its counsel, that the deficiency in tax of said taxpayer for the taxable years 1917, 1918, 1919, and 1920 shall be determined and assessed in accordance with the following agreement:

"(1) That on or about October 1, 1908, the Minnesota & Ontario Paper Co. acquired from the Backus-Brooks Co., a corporation, all of the outstanding stock of the Ontario & Minnesota Power Co., Ltd., a Canadian corporation, and of the Rainy River Improvement Co., an American corporation, and other assets in exchange for its 10,000 shares of preferred stock of a par value of $1,000,000 and 50,000 shares of common stock of a par value of $5,000,000 and other considerations. That the value of the stock and other assets so acquired by the Minnesota & Ontario Paper Co. from the Backus-Brooks Co., in exchange for its 10,000 shares of preferred stock and 50,000 shares of common stock as referred to in paragraph 2 of the taxpayer's amended petition filed with the Board of Tax Appeals on September 25, 1925, was $2,914,-000.

"(2) On or about December 31, 1905, the International Lumber Co. acquired from the Backus-Brooks Co. certain timber and other property in exchange for 6,000 shares of its capital stock of a par value of $100 per share. That the actual cash value of the timber so acquired by the International Lumber Co. for its said stock was $754,861.50, and the International Lumber Co. is entitled to include in its invested capital account said amount of $754,861.50.

"The International Lumber Co. acquired by deed dated March 10, 1909, from the Backus-Brooks Co. certain timber and other property referred to in paragraph 2 (a) of the taxpayer's amended petition, in exchange for $4,000 shares of its capital stock of a par value of $100 per share and cash in the amount of $198,396.78. The taxpayer is entitled to include in its invested capital account on account of the property so acquired for its stock and other considerations as hereinbefore mentioned said amount of $598,396.-78.

"(3) During the taxable years, 1917, 1918, 1919, and 1920 the Minnesota & Ontario Paper Co. purchased from the Fort Frances Pulp & Paper Co., Ltd., a Canadian Corporation, newsprint paper in the quantities and for the amounts hereinafter stated, as alleged in paragraph 3 of the taxpayer's amended petition:

|  | Tons | Purchase price |
|---|---|---|
| 1917 | 28,685 | $1,721,112.90 |
| 1918 | 22,907 | 1,512,114.65 |
| 1919 | 24,595 | 1,763,685.93 |
| 1920 | 36,736 | 3,688,378.98 |

"That all of the newsprint so purchased by the Minnesota & Ontario Paper Co. from the Fort Frances Pulp & Paper Co., Ltd., was resold by the Minnesota & Ontario Paper Co. at a profit. The taxable profit derived by the Minnesota & Ontario Paper Co. from the sale of the newsprint paper purchased from the Fort Frances Pulp & Paper Co., Ltd., as aforesaid for each of said taxable years is as follows:

| 1917 | $ 88,982.87 |
|---|---|
| 1918 | 81,290.54 |
| 1919 | 97,989.68 |
| 1920 | 184,854.00 |

"During the taxable years 1917, 1918, 1919, and 1920 the Minnesota & Ontario Paper Co. sold to the Fort Frances Pulp & Paper Co., Ltd., pulpwood in the quantities and for the amounts hereinafter stated, as alleged in paragraph 3 (a) of the taxpayer's amended petition:

|  | Tons | Purchase price |
|---|---|---|
| 1917 | 27,930⅝ | $328,435.25 |
| 1918 | 13,492 | 161,904.00 |
| 1919 | 27,969⅔ | 433,086.49 |
| 1920 | 31,718⅛ | 666,364.50 |

"During each of the taxable years 1917, 1918, 1919, and 1920 the Minnesota & Ontario Paper Co. sold to the Fort Frances Pulp & Paper Co., Ltd., sulphite in the quantities and for the amounts hereinafter stated, as alleged in paragraph 3 (a) of the taxpayer's amended petition:

|  | Tons | Purchase price |
|---|---|---|
| 1917 | 9,995.8995 | $774,486.51 |
| 1918 | 8,103.8552 | 526,750.60 |
| 1919 | 9,250.2030 | 948,163.89 |
| 1920 | 11,783.4686 | 1,296,992.74 |

"That the total prices received by the Minnesota & Ontario Paper Co. from the Fort Frances Pulp & Paper Co., Ltd., on the sale of said pulpwood and sulphite were fair and reasonable and the action of the commissioner

in allowing the transactions to stand, as shown by the books of the taxpayer, is hereby accepted as correct by the taxpayer.

"During each of the taxable years 1917, 1918, 1919, and 1920 the Minnesota & Ontario Paper Co. realized a gross profit on the sale of hog fuel to the Fort Frances Pulp & Paper Co., Ltd., as follows:

| | |
|---|---|
| 1917 | $ 700.00 |
| 1918 | 8,080.00 |
| 1919 | 9,950.00 |
| 1920 | 16,350.00 |

in lieu of the profits shown for each of said years on the books of the taxpayer on account of the sale of hog fuel from the taxpayer to the Fort Frances Pulp & Paper Co., Ltd., for each of said years.

"(4) That the International Lumber Co. is not entitled to include in its invested capital account for either or any of the taxable years 1917, 1918, 1919, and 1920 the value of the timber alleged to have been acquired from the Backus-Brooks Co. under an alleged contract bearing date of October 10, 1910, and referred to in paragraph 4 of the taxpayer's amended petition.

"(5) During the taxable years 1917, 1918, 1919, and 1920 the International Lumber Co. sustained losses in its timber and pulpwood holdings in the following amounts, which the taxpayer is entitled to deduct from its gross income in computing its net income for the taxable years in question:

| | Saw timber | Pulpwood |
|---|---|---|
| 1917 | $24,672.92 | $3,431.40 |
| 1918 | 14,814.80 | 3,909.78 |
| 1919 | 17,993.14 | 3,598.32 |
| 1920 | None. | None. |

"(6) The taxpayer sustained depreciation on its logging spur known as the "Mizpah Spur" and referred to in paragraph 6 of the taxpayer's amended petition, for each of the taxable years 1917, 1918, 1919, and 1920, as follows:

| | |
|---|---|
| 1917 | $ 7,605.04 |
| 1918 | 38,633.48 |
| 1919 | 18,952.26 |
| 1920 | 45,547.63 |

"The taxpayer is not entitled to an allowance for depreciation on the Cut Foot Sioux line referred to in paragraph 6 of the taxpayer's amended petition in excess of the amount heretofore allowed by the commissioner, and the taxpayer's claim in respect thereto is hereby waived and withdrawn.

"The taxpayer, the International Lumber Co., hereby waives and withdraws its claim with respect to the deduction claimed on account of fraud in the construction of the "Cut Foot Sioux" and "Galvin-Nett-Lake" lines as referred to in paragraph 6 (a) of the taxpayer's amended petition.

"(7) The value of the taxpayer's saw timber as of March 1, 1913, was $5 per 1,000 board feet and the value of its pulpwood as of said date was $1 per cord.

"That in computing the net income of the International Lumber Co. for each of the taxable years 1917, 1918, 1919, and 1920, the following lumber inventory figures shall be accepted and agreed to by the parties to this stipulation:

| | |
|---|---|
| December 31, 1916 | $1,814,954.84 |
| 1917 | 1,540,481.55 |
| 1918 | 2,191,267.84 |
| 1919 | 2,149,496.20 |
| 1920 | 2,550,461.54 |

"It is stipulated and agreed that the inventory shown above as at December 31, 1920, in the amount of $2,550,461.54 includes at its proper value the 29,480,000 feet of lumber alleged to have been sold to the Keewatin Lumber Co., Ltd.

"(8) It is further stipulated and agreed that the claim of the taxpayer as set forth in paragraph 9 of the taxpayer's amended petition shall be adjusted in accordance with paragraph 9 of the stipulation No. 1, heretofore filed before the United States Board of Tax Appeals.

"(9) The claim of the Minnesota, Dakota & Western Railway Co. against the United States Government in the amount of $105,923.44 under section 209 of the Transportation Act of 1920 should properly be accrued upon the books of the taxpayer for the taxable year 1920 and included in its taxable income for said year.

"It is agreed that the taxpayer may at any time before the said claim is barred by the statute of limitations after the payment of the tax as computed under this stipulation (notwithstanding anything herein or in any other agreement between it and the Commissioner of Internal Revenue, or the Secretary of the Treasury to the contrary) file a claim for refund for the tax imposed upon it by reason of this claim of $105,923.44 being taxed as taxable income. In the event that the said claim of $105,923.44 filed under section 209, or any part thereof, is disallowed by the United States Government or withdrawn by the taxpayer said claim for refund shall thereupon be allowed as provided by law, together with such interest, if any, as may be permitted under the statute.

"(10) The taxpayer hereby withdraws its claim for a deduction of $144,535.79 on account of the tearing out and abandonment of a portion of the dam referred to in paragraph 11 of the taxpayer's amended petition, and accepts as correct the action of the commissioner in refusing to allow the deduction taken on account of said item.

"(11) The taxpayer hereby withdraws its claim with respect to a loss alleged to have been sustained on account of the alleged sale of the Engler mill site referred to in paragraph 12 of the taxpayer's amended petition and accepts as correct the commissioner's action in refusing to allow the deduction taken on account of said alleged transaction.

"(12) The taxpayer hereby withdraws its claim with respect to a loss alleged to have been sustained on account of the alleged sale of the Beaver Land & Timber Co. asset referred to in paragraph 13 of the taxpayer's amended petition and accepts as correct the commissioner's action in refusing to allow the deduction taken on account of said alleged transaction.

"(13) It is further stipulated and agreed that the sum of $530,640.00, representing the gross selling price of the lumber alleged to have been sold by the taxpayer to the Keewatin Lumber Co., Ltd., as set forth in paragraph 14 of the taxpayer's amended petition, was erroneously added to the taxable net income of the International Lumber Co. as computed and set out in the deficiency letter covering the taxable year 1920. The taxpayer hereby withdraws its claim to the deduction on account of the loss alleged to have been sustained on account of said transaction and hereby agrees to and accepts as correct the action of the commissioner in holding that said alleged sale was a nullity, void, and of no effect.

"(14) The taxpayer hereby agrees to and accepts as correct the action of the commissioner in disallowing as a deduction for the taxable year 1920 the sum of $213,068.94 referred to in paragraph 15 of the taxpayer's amended petition.

"(15) The taxpayer hereby withdraws its claim with respect to the loss in its coal inventory of $60,200.00 referred to in paragraph 16 of the taxpayers' amended petition and hereby agrees to and accepts as correct the action of the commissioner in refusing to allow the deduction taken in the year 1920 on account of said transaction.

"(16) The taxpayer deducted from its income for the taxable year 1920 the sum of $46,417.92 on account of an alleged loss sustained as the result of a decision of the Supreme Court of the State of Minnesota rendered on December 26, 1919, and referred to in paragraph 17 of the taxpayer's amended petition. The commissioner refused to allow any deduction on account of said alleged loss, and the taxpayer hereby withdraws its claim with respect to said loss and agrees to and accepts as correct the action of the commissioner in disallowing same.

"(17) It is further stipulated and agreed that the Backus-Brooks Co. and the Minnesota & Ontario Paper Co. were not affiliated for the years 1917, 1918, 1919, and 1920 within the meaning of section 240 of the Revenue Act of 1918 or any other revenue acts.

"(18) During the taxable year 1920 the Ontario & Minnesota Power Co., Ltd., sold to the taxpayer (Minnesota & Ontario Paper Co.) certain horsepower at $100 per horsepower per annum. The fair market value of the horsepower so purchased by the Minnesota & Ontario Paper Co. from the Ontario & Minnesota Power Co., Ltd., a Canadian corporation, and a subsidiary of the taxpayer (Minnesota & Ontario Paper Co.) was $25.00 per horsepower per annum, and the taxpayer hereby agrees to and accepts as correct the action of the commissioner in disallowing as a deduction by the taxpayer the sum of $152,998.88 on account of this item.

"(19) It is further stipulated and agreed that the action of the commissioner in including in the taxable income of the Minnesota, Dakota & Western Railway Co. in each of the taxable years 1917, 1918, 1919, and 1920, the sum of $12,500.00, representing the interest accrued on the obligation of the International Bridge & Terminal Co., a Canadian corporation, referred to in paragraph 20 of the taxpayer's amended petition, is hereby agreed to and accepted as correct by the taxpayer.

"It is hereby stipulated and agreed that there shall be added to the invested capital of the taxpayer for each of the taxable years 1917, 1918, 1919, and 1920 the sum of $205,960.27, in addition to the amount heretofore allowed by the commissioner on account of said obligation.

"(20) The taxpayer, the Minnesota & Ontario Paper Co., is not entitled to have its excess-profits taxes computed in accordance with the provisions of section 210 of the Revenue Act of 1917 and sections 327 and 328 of the Revenue Act of 1918.

"(21) The taxpayer hereby agrees to and accepts as correct the action of the commissioner in restoring to the taxable net income

of the Minnesota & Ontario Paper Co. for the taxable year 1920 the sum of $10,400 taken as a deduction on account of the sale of stock of the Liberty National Bank which was consummated on January 31, 1921.

"(22) The taxpayer hereby consents to the action of the commissioner in restoring to the taxable net income of the Rainy River Improvement Co. for the taxable year 1917 the sum of $9,250.00 as alleged in paragraph 26 of the commissioner's answer to the taxpayer's amended petition on account of the payment made by it to the Virginia & Rainy Lake Lumber Co.

"(23) It is stipulated and agreed that the taxpayer erred in deducting from its taxable income for the year 1917 the sum of $184,061.30 on account of the loss on "Kraft Mill," but the taxpayer was entitled to take such deduction for the taxable year 1918 and the taxable income for such two years shall be recomputed accordingly.

"(24) The commissioner hereby withdraws the claim asserted in respect to the accrual of taxes referred to in paragraph 25 of the commissioner's answer to the taxpayer's amended petition.

"(25) It is hereby expressly agreed and understood that the claim of the Minnesota, Dakota & Western Railway Co., in the sum of $158,035.00, arising under section 204 of the Transportation Act of 1920, is excepted from the operation of this agreement and the taxpayer hereby waives the benefit of any statute of limitations and consents to the assessment of any additional tax which may result from the allowance and payment of all or any part of said claim at any time hereafter.

"(26) It is further stipulated and agreed that the understatement of the amount of the taxable net income as shown by the returns filed by the taxpayer herein for each of the taxable years 1917, 1918, 1919, and 1920 was due to negligence on the part of the taxpayer but without intent to defraud.

"Dated February 25, 1926.
    "The Minnesota & Ontario Paper Co.,
    "Ralph M. Shaw,
    "John Junell,
        "Attorneys in Fact.
    "Commissioner of Internal Revenue,
"A. W. Gregg,
        "Solicitor of Internal Revenue.
"E. C. L."

11. On the following day, to wit, February 26, 1926, the following stipulation, signed by the attorneys for the plaintiff and its affiliated corporations, petitioners before the Board of Tax Appeals, and by the Solicitor of Internal Revenue for the Commissioner of Internal Revenue, was filed with the board:

"Appeals of Minnesota & Ontario Paper Co. and its affiliated corporations, to wit: International Lumber Co., Falls Lumber & Coal Co., International Insulation Co., Minnesota, Dakota & Western R. R. Co., Rainy River Improvement Co., and Watrous Island Boom Co., Docket Nos. 2128, 2127, 2699

"Stipulation

"It is hereby stipulated and agreed by and between the Commissioner of Internal Revenue, by his attorney, A. W. Gregg, Solicitor of Internal Revenue, and by the Minnesota & Ontario Paper Co. and its said affiliated corporations, hereinafter referred to as the 'taxpayer,' by its counsel, that the taxpayer's deficiency in tax for the taxable years 1917, 1918, 1919, and 1920 shall be determined by the Board of Tax Appeals in accordance with the agreement entered into between the taxpayer and the commissioner on February 25, 1926, a copy of which is hereto attached, marked 'Exhibit A,' and made a part of this stipulation."

The settlement agreement executed by the parties on February 25, 1926, given in the preceding finding, was attached to and filed with the Board of Tax Appeals with the above stipulation, as Exhibit A thereof. The attorneys representing the plaintiff and its affiliated corporations before the board filed the above-mentioned agreement for said taxpayer petitioners with the approval, consent, and under the direction of E. W. Decker, who acted for the taxpayer corporations under authority conferred upon him by the board of directors as set forth in the resolutions of December 24, 1925, Finding 8 hereof.

12. February 26, 1926, the Board of Tax Appeals entered the following order signed by J. G. Korner, Jr., member and chairman of the board:

"This appeal coming on to be heard on February 26, 1926, the taxpayer being represented by Ralph M. Shaw, Esq., and the commissioner being represented by E. C. Lake, Esq., and it appearing that the parties have entered into a certain stipulation which was filed on this date, and it appearing that the parties have agreed to compute the tax in accordance with the stipulation aforesaid: Now, therefore, on agreement of counsel for both parties, it is

"Ordered, That the tax shall be computed

in accordance with the stipulation filed this date and referred to hereinabove. Final determination of the deficiency will be made under rule 50 of the board's Rules of Practice on consent of the parties or on 10 days' notice by either party to the adverse party."

This order duly became the decision of the board under the statute.

At that time the practice and procedure of the Board of Tax Appeals, under its rule 50, was as follows:

"Settlement of Final Determination

"When the board determines the issues in any proceeding and withholds final decision of the deficiency or overpayment for later computation, the parties shall, if they are in agreement as to the amount of the deficiency or overpayment, in accordance with the determination of the board, file with the board an original and four copies of a computation showing the amount for entry of final decision forthwith. If the parties are not in agreement as to the amount to be entered in the final decision, either of them may file with the board a computation of the deficiency or overpayment believed by him to be in accordance with the determination of the board. The clerk will serve a copy thereof upon the opposite party and will thereupon place the matter upon the day calendar for hearing in due course and give the usual notice. If the opposite party fails to file objection, accompanied by an alternative computation, within 5 days prior to the date of such hearing, or any continuance thereof, the deficiency or overpayment shown in the computation already submitted shall be taken to be correct and decision thereon will be entered. If the parties submit different computations and amounts, they will be afforded an opportunity to be heard thereon on the date fixed, and the board will determine the correct deficiency or overpayment and enter final decision.

"Any hearing under this rule will be confined strictly to the consideration of the correct computation of the deficiency or overpayment resulting from the determination already made, and no argument will be heard upon or consideration given to the issues or matters already disposed of by such determination or of any new issues. This rule is not to be regarded as affording an opportunity for rehearing or reconsideration."

13. March 6, 1926, the Board of Tax Appeals entered its final decision and judgment by consent of the parties for the year 1917, said judgment, which was signed by J. G.

Korner, Jr., member and chairman of the board, being as follows:

"Now on the 6th day of March, 1926, the above-entitled appeal coming on to be heard on the stipulation of the taxpayer and the commissioner, signed and executed by their respective counsel, and it appearing from said stipulation and other documentary evidence submitted that the true tax liability of the Minnesota & Ontario Paper Company and its affiliated corporations for the taxable year 1917 is $531,073.65, of which the sum $41,540.25 has heretofore been paid, and the sum $801,379.16 has heretofore been assessed, and it further appearing that there is due a penalty of $227,633.03, no part of which has been assessed or paid:

"Now therefore, it is considered and

"Ordered, that the amount of tax deficiency and penalty due from the taxpayer be, and the same is hereby, redetermined for the year 1917 to be $489,533.40 tax and $227,633.03 penalty, and that of the tax heretofore assessed there shall be abated the sum of $270,305.51 and the amount of the penalty of $227,633.03 shall be assessed and paid."

The recital in the foregoing decision and judgment of the board that, "and it appearing from said stipulation and other documentary evidence submitted," refers, first, to the stipulation filed with the Board of Tax Appeals on March 6, 1926, hereinafter set out in full; and, secondly, to a detailed computation prepared by the representatives of the plaintiff and its affiliated corporations, petitioners before the board, and the Commissioner of Internal Revenue of the consolidated net income, invested capital, the resulting tax liability, and the deficiencies in tax and penalties to be paid by the plaintiff for the years 1917 to 1920, inclusive, said deficiencies in tax and penalties being stated therein as follows:

| Year | Tax | Penalty |
| --- | --- | --- |
| 1917 | $489,533.40 | $227,633.03 |
| 1918 | 351,943.48 | 139,897.55 |
| 1919 | 491,360.53 | 165,834.17 |
| 1920 | 920,772.85 | 255,514.46 |

March 6, 1926, two similar consent judgments were entered by the Board of Tax Appeals, one with respect to the year 1918 and one with respect to the years 1919 and 1920. The deficiencies in tax and penalties to be paid by the plaintiff for such years were set out in said judgments in the amounts shown, for such years.

The stipulation of March 6, 1926, referred in said judgments of the board was filed with said board on March 6, 1926, and was as follows:

"United States Board of Tax Appeals

"Appeals of Minnesota & Ontario Paper Co. and its affiliated corporations, to wit: International Lumber Co., Falls Lumber & Coal Co., International Insulation Co., Minnesota, Dakota & Western R. R. Co., Rainy River Improvement Co., and Watrous Island Boom Co., Docket Nos. 2128, 2127, 2699

"Stipulation.

"It is hereby stipulated and agreed by and between the Commissioner of Internal Revenue, by his attorney, A. W. Gregg, Solicitor of Internal Revenue, and by the Minnesota & Ontario Paper Co. and its said affiliated corporations, hereinafter referred to as the 'taxpayer,' by its counsel, that the amount of the deficiency due from the taxpayer or overassessment in the above-entitled appeals for each of the taxable years 1917, 1918, 1919, and 1920 is as follows:

|  | Tax | Penalty |
|---|---|---|
| 1917, overassessment... | $270,305.51 | $227,633.03 |
| 1918, overassessment... | 532,722.18 | 139,897.55 |
| 1919, deficiency......... | 491,360.53 | 165,834.19 |
| 1920, deficiency......... | 920,772.85 | 255,514.47 |

"Dated.
    "The Minnesota & Ontario Paper Co.,
    "Ralph M. Shaw,
    "John Junell,
        "Attorneys in Fact.
    "Commissioner of Internal Revenue,
    "A. W. Gregg,
        "Solicitor of Internal Revenue.
    "E. C. L."

14. In February, 1921, and in March, 1924, the commissioner assessed additional taxes for 1917 in the aggregate amount of $759,838.91; in March, 1924, he assessed additional taxes for 1918 of $884,665.66. January 23, 1925, the commissioner notified the plaintiff of an additional tax or deficiency for 1919 in the amount of $613,248.82. On the same day the commissioner notified the plaintiff and its affiliated corporations of an additional tax or deficiency for 1920 of $1,403,435.47.

The overassessments for the years 1917 and 1918, respectively, as set out in said stipulation filed with the Board of Tax Appeals March 6, 1926, are the differences between the several amounts of additional tax assessed for such years and the amounts of the additional taxes due for each of those years.

The amounts of the deficiencies, or additional taxes, for 1919 and 1920, respectively, as set out in said stipulation filed with the board March 6, 1926, are the same as those shown by the computation and stipulation filed with the board.

The respective amounts of overassessments, deficiencies, and penalties, as set forth in said stipulation and computation, both of which were filed with the board on March 6, 1926, were computed pursuant to and in accordance with the settlement agreement of the parties in their behalf made, as evidenced by the stipulation executed by the parties February 25, 1926, and filed with the Board February 26, 1926, and a letter dated February 25, 1926, as follows:

"Minnesota & Ontario Paper Co.,
    "1100 Builders Exchange Building, Minneapolis, Minnesota.
"Gentlemen:
    "Confirming the agreement made with the Commissioner of Internal Revenue on February 24, 1926, you are advised that the amount of the penalty to be assessed against you as the result of the negligent understatement of your tax liability for the taxable years 1917, 1918, 1919, and 1920, will be compromised by accepting a sum equal to 6% per annum on the amount of the deficiencies determined and assessed in accordance with the stipulation this date entered into between the taxpayer and the representative of this office, from the date the deficiencies became due and payable to the date of payment.
        "Respectfully,
            "[Signed]   A. W. Gregg,
            Solicitor of Internal Revenue.
    "Approved:
            "[Signed]   D. H. Blair,
            Commissioner of Internal Revenue."

The stipulation referred to in said letter, and executed February 25, 1926, is set out in full in finding 10.

The understatement of the amount of taxable net income as shown by plaintiff and its affiliated corporations in the returns filed for each of the taxable years 1917, 1918, 1919, and 1920 was due to negligence on their part. The several amounts of penalties set forth in the stipulation filed with the Board of Tax Appeals on March 6, 1926, were $227,633.03 for 1917, $139,897.55 for 1918, $165,834.17 for 1919, and $255,415.46 for 1920, totaling $788,879.21, and were much less than the

penalties and interest prescribed by law for the negligent understatement of the tax liability. The penalties and interest of 5 per cent. of the deficiencies and 1 per cent. per month from the date such tax was due until paid, prescribed by law for such understatement (section 14 (a) of the Revenue Act of 1916 and section 250 (b) of the Revenue Act of 1918), exceeded the aggregate sum of $1,600,000 and were more than $811,120 in excess of the penalties and interest stipulated by the parties and included by the Board of Tax Appeals in its consent judgments; the several amounts of penalties set forth in said stipulation and in the consent judgments being the result of the compromise agreement as evidenced by said letter of February 25, 1926.

The decision of the Board of Tax Appeals of February 26, 1926, finding 12, was entered pursuant to and in accordance with the stipulation filed with the board on that date. The judgments and decisions of the board entered March 6, 1926, were consent judgments or decrees and the amounts of the deficiencies and penalties adjudicated therein were taken from and were in accordance with the stipulation filed with the board March 6, 1926, and the detailed computation of the deficiencies and overpayments for the years involved made and agreed upon between the plaintiff and its affiliated corporations and the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury.

15. March 6, 1926, the day on which the Board of Tax Appeals entered its final judgments by consent of the parties, the commissioner forwarded to the plaintiff the Minnesota & Ontario Paper Company the following letter:

"Reference is made to the above-entitled appeal, lately pending before the United States Board of Tax Appeals, in which the board on the 6th day of March, 1926, entered an order fixing your tax liability for the taxable years 1917 to 1920, inclusive, pursuant to the stipulation dated February 25, 1926, and executed on behalf of the taxpayer and the Commissioner of Internal Revenue by their respective counsel.

"Inasmuch as the capital-stock tax returns of your company and its affiliated companies for the taxable period in question will probably disclose additional amounts due the Government on account of capital-stock taxes, and which amounts, if paid, are proper deductions from gross income for the respective taxable years 1917, 1918, 1919, and 1920, you are advised that claims for refund on account of any overpayment of income and excess-profits taxes for each of the taxable years 1917 to 1920, inclusive, resulting from the correction of your capital-stock tax returns for said period will be received, considered, and allowed to the extent necessary to give effect to the proper adjustments of your capital-stock tax liability, provided such claims for refund with a copy of this letter attached are filed with the collector of internal revenue for your district within sixty days after the assessment of said capital-stock taxes.

"If a claim is filed by the taxpayer it must be distinctly understood that same will be considered and allowed solely and only with respect to the capital-stock tax adjustment and to no other, and will be limited to the amount of the tax overpaid as such and not to any amount paid as a penalty."

March 12, 1926, R. D. Main, comptroller of plaintiff, replied as follows:

"This will acknowledge receipt of your letter of March 6th, 1926, advising as to the probability of additional amount due the Government on account of capital-stock taxes for the respective years 1917 to 1920, inclusive, and likewise for subsequent years.

"It is noted that you will receive, consider, and allow claims for refund on account of any overpayment of income, and excess-profits taxes for each of the years 1917 to 1920, inclusive, to the extent necessary to give effect to the proper adjustments of the capital-stock tax liability, provided such claims for refund are filed with the collector of internal revenue within sixty days after the assessment of said capital-stock taxes.

"We would take this opportunity of advising you at this time that it is our intention to immediately amend the income and excess-profits tax returns filed for the years 1921 to 1924, inclusive, following the settlement recently consummated on the tax liability for the years 1917 to 1920, and we will also prepare amended returns for capital-stock tax purposes."

16. Assessment certificates covering the amounts of the deficiencies and penalties and amounts to be abated, as determined by the Board of Tax Appeals in said cases, docket Nos. 2127, 2128, and 2699, for the years 1917 to 1920, inclusive, were duly issued and the amounts of the deficiencies and penalties were paid by the plaintiff by checks on March 22, 1926, without objection.

Thereafter the capital-stock taxes due from the plaintiff for the years 1917 to 1920, inclusive, were redetermined and the respec-

tive additional amounts thereof were assessed by the commissioner and paid by plaintiff, September 14, 1926, plaintiff filed claims for refund for the overpayment of its income and profits taxes for the years 1917 to 1920, inclusive, for and on account of the additional capital-stock tax assessed and paid. Said additional capital-stock tax having been determined and paid subsequent to the judgments of the Board of Tax Appeals entered March 6, 1926, the amounts thereof were not deductible from the gross income of the Minnesota & Ontario Paper Company as shown in the computation and stipulation filed with the Board of Tax Appeals March 6, 1926, but the plaintiff was advised on that date that this particular matter would be taken care of. July 30, 1926, the case of the Minnesota & Ontario Paper Company and its affiliated corporations for the years 1917 to 1920, inclusive, was formally closed in the Bureau of Internal Revenue by the following memorandum:

"Mr. Nash,

"Assistant to the Commissioner:

"Reference is made to the above-entitled appeals, lately pending before the United States Board of Tax Appeals, involving deficiencies in tax for each of the taxable years 1917 to 1920, inclusive.

"On February 26, 1926, the representatives of this office entered into a stipulation with the taxpayers, which effected a settlement of the entire tax liability for said years.

"On March 7, 1926, the board entered an order fixing the deficiencies in accordance with the stipulation above referred to.

"The administrative file has been held in this office pending the determination of the capital-stock tax liability of the companies for the period in question since the entry of the order of the board in said cases.

"As the amount of the tax due for the taxable years in question has been assessed and paid by the taxpayer, nothing further remains to be done in the matter in this office, and the cases are closed. The administrative file is transmitted under separate cover.

"[Signed] P. C. Alexander,
"Head of Appeals Division."

17. A fully executed compromise and settlement of the tax, penalty, interest, and liabilities of plaintiff and its affiliated corporations for 1917 to 1920, inclusive, was consummated in 1926. The then Commissioner of Internal Revenue, David H. Blair, took up in person the terms of the compromise and settlement with the Secretary of the Treasury, Andrew W. Mellon, who verbally approved the same; the Commissioner of Internal Revenue having frequently prior thereto discussed the questions in dispute with the Secretary of the Treasury.

18. The government had made an outlay of between $15,000 and $20,000, expenses in preparing the cases for trial before the Board of Tax Appeals, and such trial would have been held but for the compromise and settlement agreement reached by the parties, as hereinbefore set forth, the making and consummation of which were brought about at the solicitation and request of the plaintiff and its affiliated corporations.

19. No question was raised by any one with reference to the taxes and penalties paid March 22, 1926, pursuant to the judgments of the Board of Tax Appeals entered by consent of the parties to the proceedings before the board and in accordance with the compromise and settlement agreement and stipulations filed with the board, until January 30, 1928, when the plaintiff filed claims for refund of $2,489,119.50, being the taxes and penalties so paid for the years 1917 to 1920, inclusive, with interest thereon.

20. The time within which the United States might have instituted suit or asserted any claim with respect to any tax or penalty for the years 1917 to 1920, inclusive, adjudicated by the Board of Tax Appeals in the consent judgments entered March 6, 1926, expired March 6, 1927. The petition in this case was filed April 18, 1928. The petition before this court sets forth fifteen issues and allegations not specifically alleged and set forth in the three proceedings before the Board of Tax Appeals and also sets forth eleven issues and allegations set forth and involved in the three proceedings before the Board of Tax Appeals.

The plaintiff in its petition in this court does not set forth or put in issue any of the questions or issues which it had raised in the proceedings before the Board of Tax Appeals, or which were considered and settled in conferences with the Commissioner of Internal Revenue with respect to which the government had made concessions in said compromise and settlement agreement between the parties which was reduced to writing and fully executed.

Orville Smith, of Cleveland, Ohio (Thompson & Smith, of Cleveland, Ohio, on the brief), for plaintiff.

Fred K. Dyar, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (W. H. Trigg, Sp. Asst. to Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

Plaintiff sues to recover $2,489,119.50, income and profits tax and penalties adjudicated by the Board of Tax Appeals for 1917 to 1920, inclusive, in consent judgments entered pursuant to a settlement agreement with reference to all matters affecting the tax liability of plaintiff and its affiliated corporations, petitioners before the board, for these years, and stipulations duly executed by the authorized officers of the United States and the duly authorized representatives of the plaintiff and its affiliated corporations and filed with the board.

The defendant has filed a special answer to the petition and a plea to jurisdiction asking a dismissal of the petition on the ground that the matters upon which the suit is predicated were compromised and settled by a fully executed agreement and that the plaintiff is estopped from maintaining a suit with reference thereto. The plea of the defendant states that more than two years prior to the presentation of its claim by the petition filed herein, the plaintiff "had finally and conclusively settled and disposed of the same by an executed contract as provided in Revised Statutes, section 3229, and/or that by reason of its previous action in relation thereto and the now resultant prejudicial effect therefrom upon the defendant the plaintiff is estopped from maintaining this action."

Present counsel for the plaintiff deny that the tax liability for the years 1917 to 1920, inclusive, was compromised and settled in the various conferences held between January and March, 1926, and the agreements and stipulations executed pursuant thereto and filed with the Board of Tax Appeals, and deny that plaintiff is estopped by reason of such agreements and stipulations from maintaining this action. It is insisted on behalf of the plaintiff that the settlement agreements and stipulations entered into between the taxpayers, petitioners before the Board of Tax Appeals, and the Treasury officials of the United States were confined solely to the items specifically placed in issue before the board, and that plaintiff, having filed claims for refund within four years after the payment of taxes and penalties adjudicated by the board, is entitled to maintain this suit. Plaintiff further insists that the settlement agreements and stipulations are not effective as a compromise under section 3229, Revised Statutes (26 USCA § 158), for reason that

the record herein does not show that an opinion of the Solicitor of Internal Revenue was placed on file in the office of the commissioner as required by section 3229.

Upon the facts in this case we are of opinion that all matters affecting the tax liability of the plaintiff and its affiliated corporations for the taxable years 1917 to 1920, inclusive, were finally and conclusively settled by the agreements and stipulations executed and filed with the Board of Tax Appeals and by the consent judgments entered by the board. The facts have been fully stated in the findings and need not be here repeated in detail. The compromise and settlement agreement and the stipulations with which we are here concerned were agreed upon and executed after the Commissioner of Internal Revenue had made his final determinations with reference to the tax liabilities for the years involved and after proceedings with reference thereto had been instituted before the Board of Tax Appeals. The case should not therefore be considered as the usual case of an audit of returns in the Bureau of Internal Revenue. The audits in these cases had been finally made and the commissioner had mailed to plaintiff and its affiliated corporations notices of his final determinations. The corporations instituted proceedings before the Board of Tax Appeals. After the board had definitely placed the cases upon its calendar for trial, the plaintiff and its affiliated corporations, petitioners before the board, requested the Commissioner of Internal Revenue and his counsel to agree to a continuance of the trial of the cases and to enter into negotiations with the duly authorized representatives of the taxpayers, with reference to the various questions in the case with a view to arriving at a settlement of the whole case. The board of directors of the plaintiff and its affiliated corporations had duly adopted resolutions requesting Mr. E. W. Decker, president of the Northwestern National Bank, of Minneapolis, Minn., who was well known to all of the corporations and their officers, to accept the responsibility of settling the case, involving the tax liabilities of the corporations for the years 1917 to 1920, inclusive, with the government. On December 24, 1925, the board of directors of the Minnesota & Ontario Paper Company, the principal and parent corporation, and the plaintiff herein, adopted a resolution: "That E. W. Decker (President of the Northwestern National Bank, Minneapolis) be, and he hereby is, authorized and empowered to agree and stipulate on behalf of this company and

its affiliated or subsidiary companies with the Commissioner of Internal Revenue or any other representative of the United States Government, in the controversies now pending before the Board of Tax Appeals with respect to any facts therein, or to compromise and settle such controversies or any part thereof, any agreement as to facts or compromise of such controversies being hereby ratified and confirmed."

After said preliminary agreements the Commissioner of Internal Revenue and other officials of the Treasury Department agreed to enter upon a consideration and discussion of the matter of the tax liabilities of the plaintiff and its affiliated corporations for the years involved then pending before the Board of Tax Appeals with a view to a final settlement of the cases. At the outset of the negotiations it was made clear to all that unless an agreement could be reached upon all matters and items about which there was any controversy, it would be necessary to proceed with the trial of the case before the Board of Tax Appeals. It was with this understanding that the Commissioner of Internal Revenue and the duly authorized representatives of the plaintiff and its affiliated corporations entered into negotiations. More than three hundred separate items affecting the tax liabilities for the years involved were in question, many of which were specifically in issue before the Board of Tax Appeals while others were not, particularly the matter of penalties against the plaintiff and its affiliated corporations for negligent understatements of their tax in the returns filed. Each item about which there was any dispute or as to which any question arose during the conferences between the commissioner and the taxpayers was taken up and considered separately and finally agreed upon. The final result arrived at was a compromise settlement of the entire case in each instance.

During the course of the conferences for a settlement of all matters about which there was any dispute, the commissioner frequently discussed the questions under consideration with the Secretary of the Treasury. February 26, 1926, a stipulation embodying the results of the agreement was reached for all of the years involved which was reduced to writing and signed by the parties. The commissioner took up in person the terms of the compromise settlement of the case with the Secretary of the Treasury, who verbally approved the same.

■ In our opinion the resolution under which the representative of the plaintiff and its affiliated corporations acted fully authorized him finally to compromise and settle the entire case and it was with this intent and purpose that the resolution was adopted, the negotiations entered upon, and the agreements and the stipulations were entered into. The facts establish that it was the understanding and purpose of the officials of the Treasury Department finally to compromise and settle all matters affecting the tax liability of the petitioners before the Board of Tax Appeals for the years involved. The facts further establish that this was also the understanding of the representatives of the taxpayers. All matters and questions touching the tax and penalty liabilities for the years involved were removed from further dispute by a fully executed contract, compromise, and settlement, and by consent judgments entered by the Board of Tax Appeals. The compromise and settlement agreement, together with the judgments of the board, became effective as a bar to a subsequent suit. Zemurray v. United States, 64 Ct. Cl. 657. Du Puy v. United States, 67 Ct. Cl. 348; Id., 35 F.(2d) 990, 68 Ct. Cl. 574.

■ The binding effect of the compromise and settlement agreement is not destroyed by the failure of the record to contain the opinion of the Solicitor of Internal Revenue with a statement of the amount of additional tax and penalty imposed by law and the amount paid in accordance with the terms of the compromise. This provision in section 3229, Revised Statutes, provides for the filing of such an opinion after the compromise has become complete. It is addressed alone to the officer and is directory, and a failure to comply therewith would not affect the compromise itself or its validity. Henderson v. United States, 4 Ct. Cl. 75; Clark v. United States, 95 U. S. 539, 24 L. Ed. 518; 25 R. C. L. 767; Lewis' Sutherland on Statutory Construction (2d Ed.) § 611; McIlhenny et al. v. Commissioner of Internal Revenue, 13 B. T. A. 288; Id. (C. C. A.) 39 F.(2d) 356.

Finally it is contended on behalf of the plaintiff that this case was not finally settled by a closing agreement, as provided by section 1006, Revenue Act of 1924 (26 USCA § 1249 note), first enacted in the Revenue Act of 1921, and the case of Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 132, 73 L. Ed. 379, is cited.

■■ The provisions of section 1006 of the 1924 Act and section 1106 (b) of the 1926 Act (26 USCA § 1244 note) have no effect upon the question here involved. Those provisions were not designed to confer authority to com-

promise already existing, but made possible the accomplishment of that which was not authorized by the compromise section of the Revised Statutes and, therefore, covered a different field. A compromise may enter into or be a part of a closing agreement, but that has no bearing upon the main purpose of the new enactment which was not to repeal section 3229 but to provide a means whereby tax liabilities may be determined and finally settled in the Bureau of Internal Revenue prior to the running of the statute of limitation for filing a claim, making assessments and bringing suits. There is no warrant for the assumption that section 3229 of the Revised Statutes was repealed by implication. An affirmative act which gives a new right does not destroy an existing statutory right, unless the intention be apparent that the two rights should not coexist; and where two acts are merely affirmative, and the substance such that both may stand together, the latter does not repeal the earlier, but they both have concurrent efficacy.

In our opinion the case of Botany Worsted Mills v. United States, supra, is not in point here. In that case the court pointed out that an informal agreement, not assented to by the Secretary of the Treasury, made during the course of an audit in the Bureau of Internal Revenue, did not constitute a settlement which, in itself, was binding upon the government or the taxpayer, and stated that "without determining whether such an agreement, though not binding in itself, may when executed become, under some circumstances, binding on the parties by estoppel, it suffices to say that here the findings disclose no adequate ground for any claim of estoppel by the United States."

The plaintiff has received and retained the benefits flowing to it from the compromise and in our opinion is estopped from repudiating such part thereof as it contends to have been less favorable to it than was warranted by the facts or the law. It had an election either to pursue its remedy through the Board of Tax Appeals and the courts, or to compromise and settle its differences with the government and become a party to a consent decree by the board. It elected the latter course and received therein, and has ever since retained, numerous concessions and benefits. Estoppels of this character are to be distinguished from estoppels by misrepresentation. When the plaintiff and its affiliated corporations and the commissioner entered upon negotiations to settle all matters affecting the tax liability for the years involved in the proceeding pending before the Board of Tax Appeals, the commissioner had finally determined that the additional tax due was $3,661,188.86. In his answer to the petitions before the board he had made certain affirmative claims for an increase in this amount. In addition to this, the petitioners before the board were liable for negligence penalties which, upon the tax determined and claimed by the United States, amounted to approximately $2,682,000. This item had not been made an issue before the board. When the parties entered upon their negotiations, therefore, the commissioner, acting for the United States, was claiming as the result of his final determinations, that the plaintiff and its affiliated corporations owed the United States more than $6,344,000.

In arriving at the compromise and settlement agreement of the tax and penalty liabilities for the years involved to be included by the board in the consent decree, the parties before the board made concessions in order to arrive at a final agreement. Each relied upon the good faith of the other to abide by the agreement. Admittedly the United States, after an agreement had been reached as to the amount of taxes to be paid by the taxpayers, conceded more than $811,126 of a valid claim as to the item of penalties. The foregoing constitutes the very foundation of a rule generally applied by the courts that neither party to a compromise agreement or consent decree will be permitted to repudiate it. We think the full force of the rule is applicable here. The government was ready and desirous of proceeding with the trial of the cases before the board. It had expended large sums of money in preparing for trial and it was only at the urgent solicitation of the plaintiff and its affiliated corporations that the government entered into conferences for the purpose of settling the entire case. The United States, by its reliance upon the plaintiff's agreement and its consent to the judgments entered by the Board of Tax Appeals, lost its right both prior to the filing of plaintiff's claim for refund and the institution of this action to assert by counterclaim or otherwise any claim for the recovery of any tax or penalty in excess of the amounts agreed upon and adjudicated by the Board of Tax Appeals. The defendant's right in this case would be purely defensive in character. In Dickerson v. Colgrove, 100 U. S. 578, 580, 25 L. Ed. 618, the court said: "The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he

acted. Such a change of position is sternly forbidden. * * * There is no rule more necessary to enforce good faith than that which compels a person to abstain from asserting claims which he has induced others to suppose he would not rely on. The rule does not rest on the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect."

In addition to the foregoing we are of opinion that plaintiff and its affiliated corporations are bound by the consent decree entered by the Board of Tax Appeals. The Revenue Act of 1926 (44 Stat. 9) is the charter of the powers and duties of the Board of Tax Appeals and the rights and privileges of the taxpayer and the government in cases instituted before the board, both before and after the enactment of that act.

Upon the approval of this act the jurisdiction of the board in cases then pending and thereafter instituted included the question whether the tax had been overpaid.

The proceedings instituted by the plaintiff and its affiliated corporations had not been heard at the date of the enactment of the Revenue Act of 1926. The petitioners and the United States were permitted by proper pleadings prior to the hearing of the case to raise any questions they might have with reference to the tax liability for the taxable years involved, or any overpayment that had been made with respect thereto. The Peruna Co. v. Commissioner, 11 B. T. A. 1180; Peerless Woolen Mills v. Commissioner, 13 B. T. A. 1119. The Revenue Act of 1926 permitted either party to a proceeding before the Board of Tax Appeals dissatisfied with the decision of the board in a case heard and decided after the enactment of that act, to petition for review thereof in the appropriate appellate court. In proceedings instituted before the board prior to the Revenue Act of 1926 which were heard and decided by the board after the enactment of that act, the statute, as construed by the court in Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918, permitted both the filing of a petition for review in the appropriate appellate court and the institution of suit. In our opinion, however, the statute did not and was not intended to confer any greater right to institute a suit in a trial court than was given to petition for a review of a decision of the board. It is manifest that the statute did not give either party before the Board of Tax Appeals a right to a review of a compromise or a consent decree by the board as to which no issue or question remained. The functions of the Board of Tax Appeals are judicial, and since its jurisdiction in the proceedings instituted by the plaintiff and its affiliated corporations included all matters affecting the correct tax and penalty liability of the petitioners for the years involved, the consent decrees entered by the board in the case of plaintiff and its affiliated corporations definitely and finally concluded the rights of the parties, fixed the tax and penalty liability of the petitioners and they are now estopped to question the decision to which they specifically agreed. In Commissioner v. Liberty Bank & Trust Co. (C. C. A., Sixth Circuit) 59 F.(2d) 320, decided May 12, 1932, C. C. H., par. 9273, vol. III, 1932, the court pointed out that: "In passing upon matters such as are involved in this case, the Board exercises functions similar to those exercised by a trial court in a law case without a jury. * * * When a taxpayer seeks a review before the Board of a deficiency assessment, the controversy is between the taxpayer and the government as represented by the Commissioner, and the Commissioner by designation of Congress continues thereafter as the government's representative to prosecute its claims from adverse decisions of the Board. * * * It is not charged with the duty of assessing or collecting taxes but with deciding controversies between the taxpayer and the authorized representative of the government. * * *" And in Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 502, 73 L. Ed. 918, the court stated that: "In the case we have here, there are adverse parties. The United States or its authorized official asserts its right to the payment by a taxpayer of a tax due from him to the government, and the taxpayer is resisting that payment or is seeking to recover what he has already paid as taxes when by law they were not properly due. * * *" A consent judgment in a case of this kind is contractual in its nature. It is largely the act of the parties with respect to the matters involved in the action. Such a decree by consent should only be modified or changed by the same concurring agencies that first gave it form, and whatever has been legitimately and in good faith done in carrying out its provisions should remain undisturbed. The parties to the litigation before the board entered into an agreement compromising their differences with respect to the tax liabilities for the years involved and voluntarily submitted to a final decision by the

board embodying the agreement. It appears that in order to arrive at the agreement, the plaintiff and its affiliated corporations, through their authorized representatives, and the government, through its duly authorized officers, renounced what they might otherwise have claimed. In these circumstances, one party to the agreement should not be permitted to repudiate it to the disadvantage of the other. This is the case of the compromise of disputed claims, the parties dealing with each other upon terms of perfect equality, holding no relations of trust or confidence to each other, and having knowledge, or having the opportunity to acquire knowledge, of every fact bearing upon the question of the validity of their respective claims. Cleaveland v. Richardson, 132 U. S. 318, 319, 10 S. Ct. 100, 33 L. Ed. 384. "Such a settlement ought not to be overthrown, even if the court should now be of opinion that the party complaining of it surrendered rights that the law, if appealed to, would have sustained." Hennessy v. Bacon, 137 U. S. 78, 11 S. Ct. 17, 19, 34 L. Ed. 605. "The policy of the law has always been to promote and sustain the compromise and settlement of disputed claims. It loves peace, hates broils and dissensions, and discourages the prolongation of litigation and the revival of controversies which have once been closed." Chicago & N. W. Ry. Co. v. Wilcox (C. C. A.) 116 F. 913, 914.

Counsel for plaintiff has filed a motion to remand this case to the rules generally for proof on all issues of fact raised by the petition and for further proof on defendant's plea in bar. The allegations set forth in the motion contain nothing which, in our opinion, would change our conclusion on the defendant's plea. The motion is therefore denied.

The petition is dismissed. **It is so ordered.**